In re MID REGION PETROLEUM, INC., Debtor.

GENERAL AMERICAN TRANSPORTATION CORPORATION, Appellant,

v.

W. Scott MARTIN, Trustee of Mid Region Petroleum, Inc., Appellee.

No. 92–5114.

United States Court of Appeals, Tenth Circuit.

Aug. 9, 1993.

Gerald F. Munitz of Winston & Strawn, Chicago, IL (Ann C. Hinnant of Richards, Paul & Wood, Tulsa, OK, Dean C. Gramlich of Winston & Strawn, Chicago, IL, with him on the brief), for appellant.

William C. Kellough (Carol A. Grissom, with him on the brief) of Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, for appellee.

Before BALDOCK, HOLLOWAY and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

General American Transportation Corporation ("GATX") appeals the district court's order affirming the bankruptcy court's decision to disallow GATX's administrative expense claim. GATX claims the district court erred in affirming the bankruptcy court's denial of administrative expense status for post-petition rents accruing prior to the bankruptcy trustee's rejection of the underlying lease agreements. The bankruptcy court denied the administrative expense claim, holding that Debtor Mid–Region Petroleum, Inc. ("Mid–Region") received no benefit from the leased railcars because it did not use them post-petition. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[1]

The parties have stipulated to the following facts. In 1977 and 1979, GATX leased seventy railcars to Mid–Region pursuant to various lease agreements. The agreements provided that upon termination of the leases, Mid–Region was to promptly return the cars to GATX and would be liable for all accrued

---

1. GATX also asserts that if it is entitled to administrative expense status, it must be compensated at the rate specified in the lease agreements for the period beginning on the date the petition is filed and ending on the date the bankruptcy court approves the trustee's rejection. Because we hold that GATX is not entitled to administrative expense status, we do not reach GATX's valuation issues.

charges under the contract. On December 23, 1983, Mid–Region filed its Chapter 11 bankruptcy petition and retained possession of the railcars. In March 1984, W. Scott Martin was appointed trustee, and on May 15, 1984, he sent a letter to GATX cancelling the lease agreements. Following the letter, neither the trustee nor GATX took any actions to return the cars to GATX's possession. On June 20, 1984, the trustee moved the bankruptcy court for authorization to reject the GATX lease agreements, and on July 24, 1984, the bankruptcy court ordered rejection of the leases. None of the railcars were returned to GATX prior to July 24, 1984. From the time the petition was filed to the time the cars were returned, the trustee did not use the railcars for the transaction of Mid–Region business or otherwise.

On August 15, 1988, GATX filed its First Amended Proof of Claim seeking an unsecured claim in the amount of $240,234.67 for pre-petition rents and damages due to lease rejection, and an Administrative Proof of Claim seeking an administrative expense claim in the amount of $112,547.36 for post-petition rents. These amounts were later amended to $222,397.58 and $176,062.34 respectively. The trustee filed no objection to the First Amended Proof of Claim, but on September 25, 1989, sought disallowance of the administrative expense claim on the ground that GATX performed no services and incurred no expenses post-petition which benefitted the estate. The bankruptcy court disallowed the claim on this basis, and the district court affirmed. Because the parties have stipulated to the facts, we review de novo. *FDIC v. Kansas Bankers Sur. Co.,* 963 F.2d 289, 292 (10th Cir.1992).

Executory contracts, such as the GATX leases, can be assumed or rejected by the trustee at any time before the confirmation of a plan. 11 U.S.C. § 365(d)(2) (1978).[2] If the trustee assumes the leases, he must pay post-petition rent at the contract rate. 11 U.S.C. § 365(b)(1)(A) (1978).[3] However, there is no obligation for the trustee to pay post-petition rent when the leases are rejected, except unpaid post-petition rent is given unsecured claim status, 11 U.S.C. § 502(g) (1978),[4] unless the post-petition rent claim is subject to favored administrative expense status.

In bankruptcy court, the party claiming entitlement to administrative expense priority has the burden of proof. *In re Amarex, Inc.,* 853 F.2d 1526, 1530 (10th Cir. 1988). Administrative expenses are specially favored post-petition claims, given priority in asset distribution over most other claims against the bankruptcy estate. 11 U.S.C. §§ 503, 507(a)(1) (1978). For a claim to rise to the level of an administrative expense, it must fit within one of the categories listed in 11 U.S.C. § 503(b) (1978). Both parties agree that the only category which could possibly apply to the GATX leases is 11 U.S.C. § 503(b)(1)(A) (1978), which grants administrative expense status to "the actual,

---

2. Because Mid–Region filed bankruptcy in 1983, we apply the relevant Bankruptcy Code sections as they existed at that time. Bankruptcy Amendments and Federal Judgeship Act of 1984, § 553(a), Pub.L. No. 98–353, 98 Stat. 333, 392 (1984) ("[e]xcept as otherwise provided in this section the amendments made by this title shall become effective to cases filed 90 days after the date of enactment of this Act [July 10, 1984]"). Section 365(d)(2) (1978) provided:

In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

3. 11 U.S.C. § 365(b)(1) (1978) provided:

If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default.

4. 11 U.S.C. § 502(g) (1978) provided in relevant part:

A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed ... or disallowed ... the same as if such claim had arisen before the date of the filing of the petition.

necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case."

■ To be deemed an administrative expense, the expense must: (1) arise out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) benefit the debtor-in-possession in the operation of the business. *Amarex*, 853 F.2d at 1530;[5] *see also Broadcast Corp. v. Broadfoot*, 54 B.R. 606, 611 (N.D.Ga.1985) ("use of the words 'actual' and 'necessary' indicate that the estate must accrue a real benefit from the transaction for which the claim is filed"), *aff'd sub nom., In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir.1986).[6] Potential to benefit the estate does not satisfy this requirement, *Broadcast Corp.*, 54 B.R. at 611, nor does mere possession, *In re Templeton*, 154 B.R. 930 (Bankr.W.D.Tex.1993). To be granted administrative expense status, the bankruptcy estate must benefit from the use of the creditor's property. *Broadcast Corp.*, 54 B.R. at 612–13.

■ The parties have stipulated that the railcars were never used post-petition. GATX alleges, however, that the estate received a benefit in that it was allowed to retain possession of the leased cars and spared the trouble and expense of deciding whether to reject or allow the lease early in the case, thus allowing Mid–Region the opportunity to resume business operations if they so desired or to sell the entire company to a third party with the leases intact. Although this opportunity is advantageous to the trustee, it is not the type of benefit which is provided administrative expense protection because a benefit to the estate results only from use of the leased property. *See Broadcast Corp.*, 54 B.R. at 612–13. To hold otherwise would always allow administrative expense status for mere possession. This is not a contract suit between GATX and a solvent Mid–Region, under which GATX would clearly be entitled to back rent upon default, but is instead a contest among Mid–Region's creditors. *See Broadcast Corp.*, 54 B.R. at 611 ("administrative expense scheme does not focus in the first instance on whether a creditor sustained a loss during this period, but on whether the estate has received an actual benefit"). We see no reason why GATX's claim should be superior to the claims of other Mid–Region creditors, especially considering that GATX could have moved at any time after Mid–Region filed its petition to require the trustee to accept or reject within a specified period of time, 11 U.S.C. § 365(d)(2), thereby mitigating its losses.

GATX cites *Kneeland v. American Loan & Trust Co.*, 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890), and *In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982), to support its claim of entitlement to administrative expense status. *Kneeland*, a case dealing with a receivership and foreclosure sale of a railroad, was decided long before enactment of the Bankruptcy Code of 1978 and was even decided prior to the 1978 Code's predecessor, the Bankruptcy Act of 1898. Because the Bankruptcy Code exclusively governs administrative expense determinations, we do not find *Kneeland* controlling.

*Sanders*, 22 B.R. 902, a case directly contrary to our holding today, holds that a lessor is entitled to administrative payment for the pre-rejection period at the contract rate, regardless of whether the trustee used the asset. For a number of reasons, we reject the *Sanders* rationale and cases which have followed that rationale, *see, e.g. In re Curry*

---

5. GATX argues that the *Amarex* decision is not applicable to this case because *Amarex* involved an employee's post-petition compensation while this case involves post-petition rent. We disagree. *Amarex*'s adoption of a definitive procedure for determining entitlement to an administrative expense claim is in no way limited to the particular facts of that case. Therefore, we apply that procedure.

6. Although *Broadcast Corp.* arises out of a Chapter 7 proceeding, it interprets 11 U.S.C. § 503(b)(1)(A) and has been followed in several Chapter 11 cases. *See, e.g., Kinnan & Kinnan Partnership v. Agristor Leasing*, 116 B.R. 162 (D.Neb.1990); *In re ICS Cybernetics, Inc.*, 111 B.R. 32 (Bankr.N.D.N.Y.1989); *In re Pickens–Bond Construction Co.*, 83 B.R. 581 (Bankr. E.D.Ark.1988); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891 (Bankr.E.D.Pa.1987).

*Printers, Inc.*, 135 B.R. 564 (Bankr.N.D.Ind. 1991), to the extent that those cases hold that pre-rejection, a creditor is entitled to administrative expense status, regardless of use.[7]

One of the goals of Chapter 11 is to keep administrative costs to a minimum in order to preserve the debtor's scarce resources and thus encourage rehabilitation. *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891, 897 (Bankr.E.D.Pa.1987); *see also In re Dant & Russell*, 853 F.2d 700, 706 (9th Cir.1988). In keeping with this goal, § 503(b)(1)(A) was not intended to "saddle debtors with special post-petition obligations lightly or give preferential treatment to certain select creditors by creating a broad category of administrative expenses." *Grant Broadcasting*, 71 B.R. at 897. The policy behind giving priority to administrative expenses in Chapter 11 proceedings is "to encourage creditors to supply necessary resources to debtors post-petition." *Id.* This policy is "diminished where, as here, the creditor is asserting that its administrative claims arise as a result of pre-petition executory contracts," for equipment which has not been used by nor been a direct benefit to the estate, "as opposed to contracts which are formulated post-petition" or serve to benefit the estate post-petition. *Id.* Acceptance of GATX's argument would make debtors liable for their full contract obligations on executory contracts prior to acceptance or rejection, creating tremendous pressure upon debtors to reject as many contracts as quickly as possible. *Id.* This is contrary to the purpose of the Bankruptcy Code, which accords the debtor "breathing space" to assume or reject, prior to confirmation of the plan, unless the executory contract obligee forces an earlier determination. 11 U.S.C. § 365(d)(2) (1978); *Grant Broadcasting*, 71 B.R. at 898. Therefore, we believe the preferable course is to place the burden of compelling an early

choice on creditors such as GATX. *See Grant Broadcasting*, 71 B.R. at 898.

AFFIRMED.

---

7. *Sanders* and *Curry Printers* also addressed the proper valuation method for calculating lease payments owed by the estate when the debtor-in-possession or trustee actually used the property for the benefit of the business. We emphasize that, today, we in no way decide that issue. Therefore, we find irrelevant many of the cases

cited by GATX, which resolve only the valuation issue when the fact that the debtor used the property is undisputed. *See Mohawk Industries, Inc. v. Related Industries, Inc.*, 64 B.R. 667, 669 (D.Mass.1986); *In re Energy Resources, Ltd.*, 47 B.R. 337, 338 (Bankr.D.Mass.1985); *In re Tucci*, 47 B.R. 328, 333 (Bankr.E.D.Va.1985).