In re Melodee Ann GOFF, Debtor.

Melodee Ann GOFF, Plaintiff,

v.

STATE OF OKLAHOMA ex rel. Fred MEANS, Director, Oklahoma State Bureau of Narcotics and Dangerous Drugs, Defendant.

Bankruptcy No. 93–00177–W.
Adv. No. 93–0098–W.

United States Bankruptcy Court,
N.D. Oklahoma.

Sept. 28, 1993.

34

Kenneth V. Todd, Tulsa, OK, for plaintiff.

Teresa A. Bingham, Gen. Counsel, Oklahoma State Bureau of Narcotics, Oklahoma City, OK, for defendant.

### MEMORANDUM OPINION AND ORDER

MICKEY DAN WILSON, Chief Judge.

This adversary proceeding was submitted for decision on stipulations and briefs. Upon consideration thereof, and of the record herein, the Court, pursuant to F.R.B.P. 7052, finds, concludes and orders as fol-

lows. Procedural history of the matter is included among "Findings of Fact."

### FINDINGS OF FACT

On June 28, 1990, Melodee Ann Goff ("Goff;" "debtor") filed a voluntary petition for relief under 11 U.S.C. Chapter 13 ("Ch. 13"), commencing Case No. 90–01803–W in this Court. This case is sometimes referred to hereinafter as "the first case." Goff's attorney was Kenneth V. Todd ("Todd"). Goff's first case came under the supervision of Lonnie D. Eck, Standing Ch. 13 Trustee in this District ("the Trustee").

In Goff's first case, a Ch. 13 plan was confirmed on or about August 29, 1990. A written order confirming plan was not filed until September 21, 1990. The written order recites in part as follows:

> IT IS FURTHER ORDERED by the Court that title to all property defined under 11 U.S.C. [§] 541 and 11 U.S.C. [§] 1306, and retained under the Debtor's Plan, shall remain property of the estate of the Debtor until the conclusion of this case or until further order of the Court,

stips. p. 3 ¶ 13.

Goff did not make several monthly payments under her plan. On April 15, 1991, Goff moved to modify her confirmed plan to make up her arrears. Her motion was granted on May 22, 1991, although a written order was not filed until almost a year later.

On June 17, 1992, Todd made application to withdraw as Goff's attorney. This application was granted by order filed the next day.

Goff's Ch. 13 statement and schedules are imperfectly drawn. But it appears that, when Goff commenced her first case, she claimed to own, free and clear of liens, some 34 acres of land near Sperry, Oklahoma. Goff and her son resided on this land, in a mobile home which Goff owned. According to Goff's brief in the present proceeding, there is also a barn on her land.

On the morning of April 15, 1992, agents of the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control ("the Bureau") searched Goff's mobile home pursuant to warrant. The Bureau says its agents found

> and seized approximately one pound (1 lb.) of processed marijuana, seven (7) growing marijuana plants, two (2) diazepam tablets, ... approximately four and seventy-three one hundredths (4.73) grams of "mushrooms" ... drug-related paraphernalia and four (4) firearms ... Of the ... items seized, growing marijuana, processed marijuana, drug-related paraphernalia and diazepam tablets were located in the bedroom of Goff's fourteen (14) year old son,

Bureau's brief unnumbered p. 1. Goff lists the items seized, and their locations when found, as follows:

1 Shotgun

2 Riffle [sic] (AK–47 & .22)

1 Pistol (.22 Revolver)

1 sack of photographs from kitchen records of dominion/control

1 briefcase ...

1 sack of seeds/paraphernalia from master bedroom

1 sack of seeds/paraphernalia from master kitchen

1 sack of seeds/paraphernalia from living room

1 set of T-beam scales

1 plastic bag w/brown substance from kitchen

3 bongs from refrigerator

6 Marijuana plants from master bedroom

1 Marijuana plant from child's room

2 Grow lights from Master Bedroom and Child's room

1 sack of Marijuana from master bedroom

1 sack of Marijuana from child's room with blue pills

1 blow/dart tube from child's room,

Goff's brief p. 15. According to Goff, "none of the items ... were found anywhere other than in the *mobile home* ... Nothing was found in the barn or on the land anywhere," *id.* (emphasis original).

Goff was not at home during the search. That afternoon, the Bureau's agents contacted Goff at her place of employment. According to the Bureau,

> [T]he agents explained that she (Goff) was not under arrest nor in police custody ... During the interview, Goff made several admissions ... Among the admissions, Goff stated that she used marijuana regularly and had grown it on her (Goff's) land ...,

Bureau's brief unnumbered p. 2. The Bureau filed charges against Goff, *id.;* but it is not clear when such charges were filed. It does appear that these charges were not actively pursued, until approximately one year after the search of Goff's mobile home and her "interview" with the agents.

On April 22, 1992, Goff made an "Agreement to Cooperate and testify truthfully" with the Bureau. The parties disclose the following terms of this agreement:

> ... The "Agreement to Cooperate and testify truthfully" entered into ... contains the following language at the bottom of page 2: *"There are no other promises between myself and the State of Oklahoma, other than those contained herein. I have not been threatened or coerced into making this agreement."*
>
> ... Nowhere in the three (3) page "Agreement" does the State of Oklahoma waive any rights to seek civil forfeiture of Ms. Goff's property if she cooperates fully. No mention of any real or personal property belonging to Ms. Goff appears anywhere in the "Agreement,"

stips. p. 4 ¶¶ 19, 20 (emphasis original).

On August 7, 1992, the Bureau filed in the District Court of Tulsa County, Oklahoma ("the State court") a "Notice of Seizure and Forfeiture," commencing civil action numbered CJ–92–03728 under 68 O.S.A. § 2–503(A)(8), Oklahoma's civil forfeiture statute ("the forfeiture action"). This action purported to take from Goff property which "was used or intended to be used to facilitate the commission of a violation of the Uniform Controlled Dangerous Substance Act," Bureau's notice unnum-

bered p. 2. The Bureau, petitioner in the forfeiture action, named as respondent "12.93 acres ... and [a] single-wide 'Riveroaks' Trailer House ...'" The Bureau's "Notice of Seizure ...'" was addressed to Goff and to the realty, but not to the trailer house. The Bureau announced its "inten[tion] to forfeit" the "12.93 acres ...'" but not the mobile home. Both parties have acknowledged the Bureau's intention to take from Goff not only the 12.93 acres of land, but also the mobile home which sits thereon.

On August 14, 1992, the Bureau filed in the forfeiture action a "Notice of Pendency of Action ...,'" stip. p. 2 ¶ 4, in an attempt to accomplish "constructive seizure," answer p. 3 ¶ 2.

On September 18, 1992, Goff by her attorney Robert M. Butler ("Butler") filed a "... Response and Objection to Notice of Seizure and Forfeiture." Therein Goff asserted "[t]hat such seizure and forfeiture is in violation of an existing contract between [the Bureau] and ... Goff," response p. 2. "No other claims or defenses were presented in" this response, stipulation p. 2 ¶ 3.

During October and November of 1992, discovery was conducted in the forfeiture action. On November 17, 1992, Goff filed her "Answers to Interrogatories." Sometime thereafter, Butler telephoned the bureau's counsel Teresa Bingman ("Bingman"), and told her "of the pending bankruptcy action," answer p. 4 ¶ 6. Butler also "provided the name of the attorney who was representing Ms. Goff in the Bankruptcy action, Kenneth V. Todd," *id.*—although by that time Todd had already withdrawn.

Meanwhile, Goff again missed several monthly payments under her Ch. 13 plan. On December 3, 1992, the Trustee moved to dismiss Goff's first case. On December 21, 1992, Todd re-entered his appearance as attorney for Goff in this case. The Trustee's motion to dismiss was scheduled to be heard at 2:30 p.m. on January 20, 1993. At that hearing, the Court granted the Trustee's motion, but was advised that Goff intended to file again under Ch. 13. An

"Order of Dismissal," was prepared by Todd, was signed by the Trustee, Todd and Goff herself as well as by this Court, was filed on January 20, 1993, and was docketed the next day.

At 3:00 p.m. on January 20, 1993, Goff, represented by Todd, filed a second voluntary petition for relief under 11 U.S.C. Ch. 13, thereby commencing Case No. 93–00177–W in this Court. This case is sometimes referred to hereinafter as "the second case." The next day, January 21, 1993, a docket was opened and the filing of the petition entered thereon.

In her statement and schedules in the second case, Goff reported ownership of a mobile home and of only 12.93 acres of land. What happened to the rest of the acreage scheduled in her first case does not appear. Goff reported owning the acreage free and clear; but the mobile home was collateral for Mountain States Financial Resources ("Mountain States").

With her petition, statement and schedules, Goff filed a "Supplemental Statement ... of Reasons Why This Case Should Be Allowed to Continue Notwithstanding the Dismissal of the Previous Chapter 13 Case # 90–01803–W." Therein Goff declared that "[she] must have the protection of this court ... to retain my home and to retain my land," supp. state. unnumbered p. 2 ¶ 5.

Goff's "Supplemental Statement ..." makes passing reference to "local law enforcement authorities" and to Goff's "ordeal with the criminal court system," supp. state. p. 1 ¶¶ 2, 4. Neither this document nor any of Goff's statements and schedules filed in the second case specifically list or identify the Bureau or any other agency of the State of Oklahoma. Neither the Bureau nor any other agency of the State of Oklahoma is listed on the mailing matrix in the second case.

In Goff's second case, her Ch. 13 plan was confirmed by this Court on February 17, 1993. The confirmed plan provided for 48 monthly payments to Mountain States of $116.93/month for a total of $5,613, representing the value of Goff's trailer, 11 U.S.C. § 506(a), § 1325; and for 48 month-ly payments to general unsecured creditors which would repay just over 20% of the total debt owed to these creditors. A written order confirming plan was filed on February 23, 1993. The written order recites in part as follows:

All property of the estate under 11 U.S.C. § 1306 shall be and shall remain property of the estate and all stays shall remain in full force and effect until the conclusion of this case or until further order of the court,

stips. p. 3 ¶ 14.

The day after confirmation of Goff's plan in the second case, i.e. on February 18, 1993, Todd filed in the forfeiture action a document entitled "Advice of Filing Bankruptcy and Notice of Automatic Stay, 11 U.S.C. § 362;" and mailed a copy thereof to Bingman. Later, "the respective attorneys ... conversed about legal and factual issues related to this action," stips. p. 3 ¶ 16. From the "Advice of Filing Bankruptcy ..." and from the "conversations" with Todd, the Bureau learned for the first time of the particulars of the filing and dismissal of Goff's first Ch. 13 case, stips. p. 3 ¶ 17. Although the parties do not so stipulate, it appears that the Bureau also learned for the first time of the existence and status of Goff's second Ch. 13 case. According to the Bureau, "[i]t was agreed ... that the parties would postpone setting the forfeiture matter in [the State Court] ... until ... the issues ... are resolved in Bankruptcy Court," answer p. 5 ¶ 10.

On April 13, 1993, Goff by Todd filed a "Complaint and Notice of Removal of State Court Action Pursuant to 11 U.S.C. § 1452(a) and Bankruptcy Rule 9027." This document commenced the present adversary proceeding. Thereby Goff purported to remove the forfeiture action from the State Court to this Court. Goff also prayed for additional relief peculiar to bankruptcy law, i.e.

... for an Order from this Court baring [sic] any claim of the [Bureau] against the Debtor or her property or of property of the estate; [and] for an Order finding that the filing of the [forfeiture action]

removed hereby violated 11 U.S.C. § 362 ...,

complaint p. 4.

On May 13, 1993, the Bureau by Bingman filed an "Answer to Complaint and Notice of Removal of State Court Action." Therein the Bureau prayed

> that this Court would issue an Order recognizing the [Bureau's] exception to the automatic stay provision to the Bankruptcy Code based on its right to exercise its police or regulatory power by filing the forfeiture action in [State Court] and that the Court would find that the [Bureau] has not violated and [sic; any?] U.S.C. provision by filing the forfeiture action in [State Court]. Further, the [Bureau] asks that this Court not remove the pending forfeiture action from [State Court],

answer p. 7.

On June 22, 1993, the parties filed their "Stipulation of Facts ..." On July 15, 1993, Goff filed her "Motion for Summary Judgment and Memorandum Brief in Support Thereof." On July 16, 1993, the Bureau filed its "Motion for Summary Judgment," appending thereto its "Brief in Support ..." thereof. On July 23, 1993, this Court entered an order striking trial because "the parties desire this Court to determine the issues on the pending motions for summary judgment as responded to by the parties," order 7/23/93 p. 1. The Court also "grant[ed] each party until August 6, 1993 ... to respond to [the] opposing party's motion for summary judgment," *id.* p. 2. On August 4, 1993, the Bureau filed its "... Response to [Goff's] Motion for Summary Judgment ..." and a "Brief in Support ..." thereof. On August 9, 1993, Goff filed her "Affidavit in Support of [her] Previously Filed Motion for Summary Judgment and in Opposition to the Motion for Summary Judgment of the [Bureau]," averring that she "NEVER gr[ew] marijuana on [her] land" but only "within the confines of [her] MOBILE HOME," Goff's aff. p. 2 ¶¶ 3, 4 (capitalization original). Thereafter, the Court took the matter under advisement.

## CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (G), (O), 1334(c), 1452, 11 U.S.C. §§ 105, 362, 502, 541, 1306.

■ The procedural posture of this matter is awkward. This is an adversary proceeding under F.R.B.P. 7001(2), (7), (9) and (10). It began by petition for civil forfeiture under State law in State court, and was removed hence pursuant to 28 U.S.C. § 1452 and F.R.B.P. 9027. Goff removed it by filing a "Complaint and Notice of Removal ..." An action already commenced by petition in State court needs no "complaint" to re-commence it in this Court; a notice of removal pursuant to F.R.B.P. 9027(a), (b) and (c) is sufficient. The Bureau responded by filing an "Answer ...," which asks that the removed action be returned to State court, and is therefore in the nature of a motion for remand under F.R.B.P. 9027(d). But Goff's "Complaint" also seeks affirmative relief under various causes specific to bankruptcy law, which Goff has added to the original State-law cause of action. It appears that Goff's "complaint" in this Court is in the nature of a counterclaim under Federal law against the Bureau's original claim under State law. The Bureau has asked this Court to rule on the merits of Goff's counterclaim under Federal law, before remanding the State law part of the action to State court. Alternatively, the Bureau's request for remand may be interpreted as a motion to abstain pursuant to 28 U.S.C. § 1334(c), F.R.B.P. 5011(b).

In this instance, the merits help straighten out the procedure. The Court turns to the merits.

Goff accuses the Bureau of having violated the automatic stay, 11 U.S.C. § 362, by filing and litigating its forfeiture action. Goff does not accuse the Bureau of an *intentional* or otherwise egregious violation; and she seeks no damages against the Bureau. Goff seeks only to cancel the forfeiture action, by invoking the rule that an act in violation of stay is void.

■ Goff has been continuously in bankruptcy from June 23, 1990 to the present time. The parties stipulate that "the [first] case was officially dismissed on January 21, 1993" because "the Order of Dismissal in [that] case was entered on the official docket on January 21, 1993," stips. p. 2 ¶ 7. This stipulation of law is incorrect, as the Court's order dismissing Goff's first case was effective when issued; the date of docketing is used merely to calculate the time within which the parties may appeal, F.R.B.P. 8002(a), 5003(a). It remains true that dismissal of the first case and filing of the second occurred at practically the same time.

■ The filing of the first case imposed an automatic stay on most legal and economic acts involving Goff, 11 U.S.C. § 362(a). This stay automatically terminated on dismissal of the first case, 11 U.S.C. § 362(c). The filing of the second case imposed a second automatic stay. This stay continues in effect. In these successive cases, an automatic stay of most proceedings against Goff has been in force continuously from 1990 until now.

11 U.S.C. § 362(a) stays acts against Goff personally, including

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

.        .        .        .        .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title ...

The Bureau had no cause against Goff until almost 2 years after the commencement of Goff's first case. Therefore 11 U.S.C. § 362(a)(1), (6) do not apply to the Bureau's actions in Goff's first case. These subsections do apply to the Bureau's continuation of its forfeiture proceedings in Goff's second case. However, such "continuation" was not active. Further, it is unclear to what extent the Bureau's forfeiture action is "against Goff" and not merely against her property.

11 U.S.C. § 362(a) also stays acts against Goff's property, including

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; ...

"Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1). Goff's land and mobile home have undoubtedly been property of her bankruptcy estate in both Goff's first and second cases. The Bureau's forfeiture action seems to be an "act to obtain possession of ... or to exercise control over" such property—although the Court notes that the "act" here was judicial (filing and maintaining an action) and did not involve physical seizure of any property. Therefore, 11 U.S.C. § 362(a)(3) applies to the Bureau's commencement of its forfeiture proceeding in Goff's first case and its continuation thereafter in Goff's first and second cases. However, as noted above, the "continuation" of forfeiture in Goff's second case was not active.

At worst, the Bureau may have committed an inadvertent violation of the automatic stay under § 362(a)(3) in the first case, and a technical but inactive violation of the automatic stay under § 362(a)(1), (3) and (6) in the second case.

■ The Bureau argues that its forfeiture action was excepted from the general reach of the automatic stay under 11 U.S.C. § 362(a) by specific savings provisions under 11 U.S.C. § 362(b). The Bureau does *not* invoke 11 U.S.C. § 362(b)(1), which excepts from stay "... the commencement or continuation of a criminal action or proceeding against the debtor." § 362(b)(1) apparently does not apply here, because this forfeiture action is civil, not criminal; and because this civil action is purportedly directed against the debtor's property, not against the debtor herself. The Bureau

does invoke 11 U.S.C. § 362(b)(4), which excepts from stay

> ... under subsection (a)(1) of this section, ... the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;
> ...

The Bureau is a "governmental unit," see 11 U.S.C. § 101(27). Is the Bureau's forfeiture action herein an exercise of "police or regulatory power?"

"The police power" is "the law of necessity," 16A AM.JUR.2D (1979) "Constitutional Law" § 370 p. 46, citing cases nn. 54, 55, and "society's natural right of self-defense," *McGuire v. Chicago, B. & Q. R. Co.,* 131 Iowa 340, 108 N.W. 902 (1906) aff'd 219 U.S. 549, 31 S.Ct. 259, 55 L.Ed. 328 (1911). Within its limits, it knows few restraints, 16A AM.JUR.2D, supra, §§ 364, 365, and is a domestic equivalent of the sovereign power of war, *id.* § 367. For this reason, it must be kept within its limits, else "it would make of sovereign will a destructive despot, superseding ... some of the most cherished principles of ... freedom," *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N.W. 882 (1914). As a rule, "the police power is exercised ... by ... the regulation of dangerous or potentially dangerous businesses, occupations, or activities," 16A AM.JUR.2D, supra, § 366 pp. 42–43. It must be distinguished, case-by-case if necessary, from other governmental powers and activities such as raising revenue, *id.*

■ So-called civil forfeiture is an action by the State against an item of property as defendant. Although such an action is technically *in rem*, it is commonly associated with criminal law enforcement, especially anti-narcotics operations. Oklahoma's civil forfeiture statute for narcotics violations, 63 O.S. § 2–503, resembles the Federal statute, 21 U.S.C. § 881.

■ Civil forfeiture enables the State to take action directly against buildings or other facilities or property, whose use for and in criminal activities constitute an ongoing threat to the public safety. Such forfeiture actions are in the nature of actions to abate a nuisance; and are classic exercises of the "police or regulatory power." But civil forfeiture actions may also serve to enhance the normal penalties for some criminal offenses, and to supplement the State's normal sources of revenue. Such forfeiture actions are not remedial, but punitive and/or acquisitive. To the extent that such forfeitures are punitive, they are directed ostensibly against premises and things, but are aimed primarily at particular people who own those premises and things, and who can be made to suffer by taking their property away from them. To the extent that such forfeitures are acquisitive, they are concerned with neither the use of a thing nor the sensibilities of its owner, but are merely an opportunistic grab at value. See generally *Austin v. U.S.,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

■ Not all forfeiture actions are alike. Therefore, not all forfeiture actions need be treated alike. Those forfeiture actions which are genuinely remedial are proper exercises of the traditional "police or regulatory power," and are entitled to the deference traditionally given thereto. Those forfeiture actions which are actually punitive or acquisitive are not proper exercises of the traditional "police or regulatory power," and need not be treated as if they were. A distinction between remedial and punitive forfeiture actions is recognized for Constitutional purposes, *Austin v. U.S.,* —— U.S. pp. —————— n. 4, 113 S.Ct. pp. 2804 n. 4, 125 L.Ed.2d pp. 496–497 n. 4. This Court adopts and adapts this doctrine for bankruptcy purposes.

This Court does not suggest that forfeiture actions which happen to be motivated by considerations of punishment or revenue are illegal. This Court's concern is not with the legality of such actions generally, but with the equity of such actions *in cases of bankruptcy.*

Here, there is no evidence that Goff's land and mobile home are, of themselves, a continuing threat to the public in the nature of a nuisance. The parties dispute whether Goff had used her *land* at some time past for growing marijuana. But it is

clear that Goff's recent offense, on the basis of which this forfeiture action commenced, consists of growing marijuana by artificial means *inside her home.* This offense is not peculiar to Goff's present land and mobile home, but can be repeated within any four walls that Goff may happen to inhabit, anywhere, anytime. Under such circumstances, this forfeiture action cannot be a normal exercise of the traditional "police or regulatory power." This forfeiture action can only be intended to punish Goff and/or to make money for the Bureau. Since this forfeiture action is not an exercise of "police or regulatory power," it is not excepted from the automatic stay under § 362(b)(4). See *Eddleman v. U.S. Dept. of Labor,* 923 F.2d 782, 790–791 (10th Circ., 1991), overruled in part not pertinent here by *Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson,* 968 F.2d 1003, 1005 n. 3 (10th Circ. 1992).

■ But that does not make this forfeiture action void. According to the Court of Appeals of this Circuit,

> Ordinarily, any action taken in violation of the stay is void and without effect, … even where there is no actual notice of the existence of the stay … Nevertheless, equitable principles may, in some circumstances, be applicable to claimed violations of the stay. The existing case law indicates that courts will apply equitable considerations at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the creditor's plight,

*In re Calder,* 907 F.2d 953, 956 (10th Circ. 1990). Here, Goff gave the Bureau no reason to know of either Ch. 13 case until long after the commencement of each case and the filing of the Bureau's forfeiture action; such omission on Goff's part was unreasonable; the Bureau's behavior after learning of Goff's bankruptcies has been eminently reasonable; and equity demands that the Bureau's forfeiture action be treated as valid, even though subject to stay. Accord, *In re Downing,* 141 B.R. 748 (B.C., N.D.Okl.1992).

■ Even though the automatic stay applies, this Court may order it "terminat[ed], annull[ed], modif[ied], or condition[ed]," 11 U.S.C. § 362(d). Even an act in violation of stay which would be "ordinarily … void," *In re Calder,* supra, can be validated by annulment of the stay, *In re Pinetree, Ltd.,* 876 F.2d 34, 37–38 (5th Circ.1989); *Algeran, Inc. v. Advance Ross Corp.,* 759 F.2d 1421, 1425 (9th Circ.1985); *In re Albany Partners, Ltd.,* 749 F.2d 670, 674–676 (11th Circ.1984). Should the automatic stay herein be annulled or otherwise modified on behalf of the Bureau?

Bankruptcy is not a haven for wrongdoers, *In re Szafranski,* 147 B.R. 976, 980–981, 987–989 (B.C., N.D.Okl.1992); *In re Culp,* 140 B.R. 1005, 1014 (B.C., N.D.Okl. 1992); *In re Manley,* 135 B.R. 137, 147 (B.C., N.D.Okl.1992). For present purposes, this Court presumes that the Bureau's punitive and/or acquisitive action is fully justified, *as between Goff and the Bureau.* But now Goff is bankrupt; and there are other interests to consider besides hers and the Bureau's.

In equity, the property of an insolvent is considered the property of his creditors, to be used to pay their debts to the extent possible. This equitable rule is codified in the modern Bankruptcy Code. A debtor's property becomes property of his bankruptcy estate, 11 U.S.C. § 541(a), § 1306. Such property is held in trust, and is managed by a trustee, 11 U.S.C. § 323(a). If the debtor remains in possession of his property (as in this Ch. 13 case), the debtor is required to act in the manner of a trustee, for the benefit of creditors who are beneficiaries of this trust estate, 11 U.S.C. § 1303, *In re Jernigan,* 130 B.R. 879 (B.C., N.D.Okl.1991). A debtor's purpose in Ch. 13 is to rehabilitate himself financially *by paying his debts to all his creditors* "to the extent reasonably feasible under the circumstances," *id.* p. 893. If full repayment is not feasible, then partial repayment is effected *pro rata,* so that losses are spread in proportion and do not fall heavily on some unlucky creditors, *In re Hancock,* 137 B.R. 835 (B.C., N.D.Okl. 1992). Bankruptcy Courts must sometimes

prevent one creditor from receiving full payment, in order to enable all creditors to receive some payment, *In re Hancock,* supra; *In re Mid Region Petroleum, Inc.,* 111 B.R. 968 (B.C., N.D.Okl.1990), aff'd 1 F.3d 1130 (10th Circ.1993).

In the present case, the Bureau purports to punish Goff, but in fact the Bureau punishes Goff's other creditors. Goff must have a home. If she loses her land and her trailer, she must find somewhere else to live, and will probably have to buy or rent a new domicile. It is unlikely that Goff can find accommodations for as little as $116.93/month, which is the amount she pays on her trailer under her Ch. 13 plan. The extra money that Goff must pay for purchase or rent of a new domicile will be money that should have been paid to her general creditors under her Ch. 13 plan. These creditors already expect to be repaid only 20% of their debt under the confirmed plan. If the Bureau has its way, these creditors will get even less. If Goff's Ch. 13 proceeding must be converted or dismissed, these general creditors will fare even worse. Absent Ch. 13, the general creditors will find it impracticable to repay themselves from Goff's future salary. They can seek repayment only from liquidation of Goff's present assets—such as her land and mobile home. If the Bureau takes those for itself, their value will not be available to Goff's other creditors. Either way, in the end it is not only Goff herself but her general creditors who will be hurt by the Bureau's seizure of Goff's property. These creditors are not criminals. They are innocent, taxpaying citizens, who do not deserve to be victimized by their own State government.

This point is too often overlooked. There has been much ado about windfalls to a guilty debtor at the expense of the State, see e.g. Michael S. Linscott, Note, *Asset Forfeiture (Modern Anti-Drug Weapon): Is Bankruptcy a "Defense"?,* 25 TULSA L.J. 617 (1990). But there is not enough concern about windfalls to the State at the expense of other innocent creditors.

The problem is how to reconcile these interests. If the Court cancels the State's forfeiture action, the Court uses its equity powers to help a criminal escape punishment for her crime. If the Court lets the State forfeit debtor's property, the Court punishes debtor's creditors for crimes they did not commit.

■ The solution is to channel the Bureau's forfeiture action, so that its effect falls on Goff alone. As an action *in rem,* the Bureau's civil forfeiture action cannot be discharged in bankruptcy, see 11 U.S.C. § 524(a). When Goff's Ch. 13 case is concluded and the automatic stay comes to an end, 11 U.S.C. § 362(c)(2), the Bureau can complete its forfeiture of Goff's property. By then, Goff's other creditors will already have been paid as much as they will ever get. The Bureau can then take Goff's property without hurting anyone but Goff. Goff will get to keep her land and mobile home for the next 3–5 years; but this is for her creditors' sake, not her own; and she will not be able to keep such property from the Bureau forever.

Alternatively, Goff attempts to argue the merits of the forfeiture action itself—e.g., whether forfeiture should be limited to Goff's mobile home, or to only that part of her land directly beneath her trailer, etc. State courts applying State forfeiture laws are better suited to determine such matters than is this Court. This is another reason to modify the stay, or to abstain pursuant to 28 U.S.C. § 1334(c).

With these objects in view, the Court turns again to the procedural posture of this matter.

The Bureau's "answer" is construed as a request to remand, for relief from stay, and/or for abstention. It is granted in part, as follows: the forfeiture action is remanded to State court; the stay previously in effect is annulled and any continuing stay modified, to the extent necessary to permit the forfeiture action to go forward in State court to and including entry of judgment; provided, however, that any judgment of forfeiture which may be entered shall be stayed in its operation until debtor's Ch. 13 discharge is granted, or if no discharge is granted, then until further

 

order of this Court. Goff's "complaint" is construed as a counterclaim against the Bureau for a declaratory judgment that the Bureau's acts in violation of stay are void. It is denied and dismissed, because annulment and modification of the stay render the Bureau's forfeiture proceedings valid up to and including entry of judgment.

AND IT IS SO ORDERED.