**In re NATIVE AMERICAN SYSTEMS, INC., doing business as Native American Sales Inc., doing business as Native American Co., doing business as Native American Companies, Debtor.**

**M. Stephen Peters, Trustee, Appellant,**

v.

**Enterasys Networks, Inc., Appellee.**

**BAP No. CO–06–036.**
**Bankruptcy No. 02–10387–EEB.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 29, 2006.

## I. APPELLATE JURISDICTION

The Trustee timely filed a notice of appeal from the bankruptcy court's March 23, 2006, Order Allowing Administrative Expense Claim, which is a final order for the purposes of appeal.[1] Since neither party to this appeal elected to have the appeal heard by the United States District Court for the District of Colorado, this Court has jurisdiction to hear it.[2]

## II. ISSUE AND STANDARD OF REVIEW

■ The single issue on appeal is whether the bankruptcy court properly treated Enterasys's service contracts as administrative expenses under § 503(b). This Court reviews a bankruptcy court's interpretation of § 503(b) de novo.[3]

## III. BACKGROUND

The Debtor is in the business of reselling technical service contracts to governmental entities. The Debtor contracts to provide a customer with technical services, then contracts with vendors of such services, such as Enterasys, to service the Debtor's customer. The price the Debtor's customer pays for the service contract is higher than the price paid by the Debtor to the vendor, such that the Debtor makes a profit on each service contract sold. Vendors agree to provide telephonic technical support for a stated period of time for a set price. Thus, the price paid by the customer is the same whether the customer regularly uses the vendor's services or does not use them at all. Similarly,

Submitted on the briefs: *

Virginia M. Dalton of Pearlman & Dalton, P.C., Denver, CO, for Appellant.

Alex Darcy of Askounis & Borst, P.C. and Kenneth J. Buechler of Sender & Wasserman, P.C., Denver, CO, for Appellee.

Before BOHANON, CORNISH, and THURMAN, Bankruptcy Judges.

## OPINION

THURMAN, Bankruptcy Judge.

The Debtor's Trustee appeals the bankruptcy court's allowance of an administrative expense to Enterasys Networks, Inc. ("Enterasys") in the amount of $40,340.20, pursuant to 11 U.S.C. § 503(b). This appeal involves the question of whether a bankruptcy court may allow a Chapter 11 administrative claim for services requested by the debtor of a creditor, where the creditor stood ready to provide the same but the debtor did not actually use the service. The bankruptcy court found in favor of the creditor, whereupon the Chapter 7 Trustee appealed. For the reasons set forth hereafter, we affirm.

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. *In re Miller*, 284 B.R. 734, 736 (10th Cir. BAP 2002) ("An order disposing of an objection to a claim is a final order for purposes of 28 U.S.C. § 158(a)(1).").

2. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1). Fed. R. Bankr.P. 8002.

3. *In re Busetta–Silvia*, 314 B.R. 218, 222 (10th Cir. BAP 2004).

once the Debtor has paid a vendor for the contract, its liability to the vendor has been satisfied, regardless of its customer's use of the vendor's services. However, in the event that a vendor failed to provide the agreed services, the customer would have a breach of contract claim against the Debtor, based on the Debtor's agreement to "provide" the services. In that event, the Debtor had the right, under its contract with the vendor, to cancel the contract and receive back a pro rata portion of the contract price.

In 2001, the Debtor renewed two one-year service contracts with two of its customers, Department of Energy ("DOE") and Lawrence Livermore Laboratories ("LLL"). The Debtor likewise renewed its contracts with Enterasys for the provision of services to those customers, by purchase orders dated December 14, 2001 and September 28, 2001, respectively.[4] The LLL contract renewal began on October 1, 2001, and the DOE contract renewal began on December 1, 2001. The Debtor filed a petition for Chapter 11 relief on January 11, 2002, after having received full contract payment from LLL in November 2001. The Debtor, which continued to operate as a debtor-in-possession, received full contract payment from DOE on March 2, 2002. Neither LLL nor DOE ever sought technical services during the relevant contract terms, though Enterasys stood ready to provide them.

On the same day that it filed its bankruptcy petition, January 11, 2002, the Debtor paid Enterasys for both service contracts by one cashier's check, issued and obtained by the Debtor that day. The Debtor mailed the check to Enterasys, which cashed it approximately five days later. One year later, on January 14, 2003, the Debtor's case was converted to Chapter 7. The newly appointed Trustee successfully sought to avoid the January 2002 payment to Enterasys, on the ground that it was an avoidable transfer pursuant to 11 U.S.C. §§ 549 and 550. Enterasys repaid the estate and filed a motion to treat that portion of its service contracts attributable to the Chapter 11 time period as an administrative expense, pursuant to 11 U.S.C. § 503(b).[5] The bankruptcy court granted Enterasys's motion, and the Trustee appealed.

## IV. DISCUSSION

■ Section 507(a)(2) grants priority to "administrative expenses allowed under section 503(b) of this title." Section 503(b)(1)(A) defines "the actual, necessary costs and expenses of preserving the estate" as administrative expenses. The Tenth Circuit Court of Appeals ("Tenth Circuit") has held that in order to be treated as an administrative expense, "the expense must: (1) arise out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) benefit the debtor-in-possession in the operation of the business."[6] The party claiming entitlement to administrative expense priority bears the burden of proving that the claim is so entitled.[7] The Trustee

---

**4.** The Debtor paid Enterasys a total of $46,349.47 for the two contracts, and received $4,612.00 from LLL and $47,459.00 from DOE, for a total of $52,071.00. Thus, the Debtor's gross profit on these two contracts was $5,721.53.

**5.** Enterasys pro-rated its contracts with the Debtor by dividing the contract price by 365 to get a *per diem* rate and multiplying that

number by the number of days from the filing of the petition to the end of each contract period.

**6.** *In re Mid Region Petroleum, Inc.*, 1 F.3d 1130, 1133 (10th Cir.1993) (citing *In re Amarex*, 853 F.2d 1526, 1530 (10th Cir.1988)).

**7.** *Mid Region*, 1 F.3d at 1132.

contends that Enterasys's claim fails to satisfy either prong of this test.

■ We discuss each of these requirements separately, keeping in mind that "[s]tatutory priorities are to be narrowly construed [b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." [8] Moreover, "[t]he policy behind giving priority to administrative expenses in Chapter 11 proceedings is to encourage creditors to supply necessary resources to debtors post-petition." [9]

## A. Transaction with the Debtor

■ The Trustee argues that payment of Enterasys on the day the Debtor filed its bankruptcy petition was not a transaction with the debtor, as required by *Mid Region* and *Amarex,* but was simply payment by the pre-petition debtor of a pre-petition debt.[10] However, Enterasys's contracts with the Debtor, though entered pre-petition, did not terminate upon the Debtor's payment but remained executory agreements, subject to the Debtor's acceptance or rejection pursuant to 11 U.S.C. § 365(a). The Debtor neither assumed

nor rejected the Enterasys contracts, which terminated according to their terms during the Debtor's Chapter 11 case. In any event, pre-petition contracts may be treated as administrative expenses to the extent that the Debtor receives post-petition consideration for them.[11] To the extent that Enterasys's provision of services was induced by the Debtor, post-petition, it constitutes a "transaction with the Debtor."

The Court of Appeals for the Tenth Circuit recently revisited administrative priority and the *"Amarex* test" in *Peters v. Pikes Peak Musicians Assoc. (In re Colorado Springs Symphony Orchestra Assoc.).*[12] In that case, a musicians' association asserted a claim for wages, pursuant to the parties' collective bargaining agreement, in the orchestra's bankruptcy case. After first finding that 11 U.S.C. § 1113 (creating protections for collective bargaining claims) did not "trump" the priority scheme of §§ 503 and 507, the Court considered whether the musicians' claims met the "transaction" and "beneficial consideration" elements of *Amarex.* Although the transaction element typically requires "af-

---

8. *Amarex,* 853 F.2d at 1530 (second alteration in original) (internal quotation marks omitted).

9. *Mid Region,* 1 F.3d at 1134 (internal quotation marks omitted).

10. The parties apparently agree that payment made to Enterasys constitutes "inducement" for its performance. However, the Trustee contends that the record fails to establish that such inducement came from the debtor-in-possession, as opposed to the pre-petition debtor, since there is no evidence as to whether the cashier's check was issued before or after the petition was filed. In a Joint Pre–Trial Statement submitted to the bankruptcy court by the Trustee and Enterasys, the parties stipulated that the "transfer was postpetition." *Joint Pretrial Statement* at 3, ¶ 23, *in* Appellant's Appendix at App–75. Given the

additional facts that (1) the check was not received or cashed by Enterasys for several days, (2) no attempt was made to prevent or dissuade Enterasys from cashing it, and (3) the Debtor quite obviously knew when it obtained the check that a bankruptcy petition was imminent, we are hard pressed to find that payment, and thus inducement, was not made post-petition. Nonetheless, we do not believe that the Debtor's inducement of Enterasys's performance is limited to the single act of payment and, therefore, it is unnecessary to resolve this issue either way.

11. *See Amarex,* 853 F.2d at 1531 ("[W]hat is crucial is what *consideration* supports the [administrative expense], and whether such consideration, or a portion of it, was pre-petition services.").

12. 462 F.3d 1265 (10th Cir.2006).

firmative action from the debtor-in-possession to either (1) accept the prior agreement between the debtor and claimant, or (2) agree to a new contract," the Court found that in the collective bargaining context, such action is prohibited by § 1113.[13] Thus, in the collective bargaining context, it is necessary to focus on the post-petition conduct of the claimant, rather than that of the debtor-in-possession, and the Court specifically did not consider "whether the Orchestra here induced the musicians to remain available to perform ... thereby implicitly affirming the collective bargaining agreement...."[14] However, finding that "the service specifically bargained for was *availability*," the Court found that "it was possible for the musicians to comply with the agreement (and be entitled to full compensation) even if they never played."[15] Therefore, the Court concluded that "by foregoing other opportunities and remaining ready, willing, and able to play, the musicians performed 'services' under the terms of the contract" and had satisfied the transaction element of expense priority.[16]

■ In this case, all of the Debtor's conduct throughout the contract terms indicated an intent to retain the benefit of the Enterasys contracts. First, the Debtor had payment issued to Enterasys on the day it filed its petition, then made no attempt to stop Enterasys's use of that payment, nor even to notify Enterasys of the pending bankruptcy proceedings. Second, the Debtor neither assumed nor rejected the Enterasys contracts, and instead merely acquiesced in Enterasys's providing of services. This both provided a direct benefit to the Debtor, since it was able to retain the profit made on the con-

tracts' resale, and deprived Enterasys of the opportunity to protect its own interests. Finally, the Debtor did not notify its customers, LLL and DOE, that the service contracts it had provided them would be terminated, which would have required a refund to them of most of their contract payments. Instead, the Debtor continued to operate its business of contract resale up to and beyond the end of the Enterasys contract terms. Thus, it appears that Enterasys's performance was induced by the Debtor post-petition.

### B. Benefit to Debtor

■ The Trustee principally argues that the Enterasys contracts did not "benefit" the Debtor in the operation of its business. We disagree. The Debtor's business was resale of technical services contracts. The Debtor could not have performed the service contracts itself, and its profit was therefore dependent upon the provision of services by providers such as Enterasys. Had Enterasys failed to responsibly carry out its duties under the contracts, the Debtor would have faced breach of contract claims by its customers, potential increased costs in connection with "covering" the services not supplied by Enterasys and, perhaps worst, loss of its goodwill in the industry. Similarly, had the Debtor rejected the Enterasys contracts during their terms, it would have had to find another source of coverage for its customers or cause them to make additional unsecured claims on the Debtor's estate. Either way, the estate would have been depleted, and the likelihood of a successful reorganization would have been significantly diminished.

13.  *Id.* at 1271–72.

14.  *Id.* at 1272 n. 4.

15.  *Id.* at 1272–73.

16.  *Id.*

The Trustee nonetheless argues that the Enterasys contracts did not benefit the Debtor because the services were provided to third parties and, therefore, the Debtor's benefit ceased once it received payment from its customers.[17] This position requires too narrow of a definition of "benefit," and is not supported by the *Mid Region* case, on which the Trustee relies. In *Mid Region*, the Tenth Circuit held that post-petition rental charges for freight cars that were retained by the debtor, but not used, were not entitled to priority treatment since the cars provided no benefit to the debtor. Significantly, the debtor was in possession of the cars pre-petition, did not continue to pay rent post-petition, and was never requested to either pay for or return the cars. Additionally, the trustee moved to reject the rental contract within a reasonable period of time. In finding that the claim was not entitled to priority, the court noted that "mere possession" of property by the Debtor was not necessarily a "benefit," and also noted that the creditor "could have moved at any time after [the debtor] filed its petition to require the trustee to accept or reject ... thereby mitigating its losses."[18]

Unlike *Mid Region*, the present case does not involve the mere continued possession of unused property by the Debtor. The Debtor's conduct indicates a desire to retain the technical services that Enterasys provided, rather than mere passive possession of property. Also, transfer of the consideration in *Mid Region*, the freight cars, was completed pre-petition, whereas Enterasys's consideration, the provision of technical services, continued on a daily basis well beyond filing of the petition.

In *Peters*, with respect to the beneficial consideration element, the Court of Appeals focused on the fact that the orchestra had initially endeavored to survive its financial problems by attempting a reorganization and that the availability of the musicians was "essential to the success" of that effort.[19] The Court distinguished *Mid Region* on the basis that, whereas "the Orchestra was actively seeking to preserve its business," the debtor in *Mid Region* "had already ceased its business operations and therefore never made use of the railroad cars."[20] The reasoning of *Peters* is persuasive in the present case. Enterasys's continued availability to provide service to Debtor's customers was beneficial to Debtor's estate by allowing it the opportunity to attempt a reorganization.

Similarly, the Trustee's reliance on *In re CIS Corp.*[21] for the proposition that pre-petition payment in full by the Debtor's customers eliminates any post-petition

**17.** Since the LLL payment was received pre-petition, the Trustee contends that there can be no administrative priority on that claim. However, since the DOE payment was received post-petition, the Trustee contends that, at most, administrative priority could be given to the portion of that claim that falls between the petition and payment, an interval of not quite two months.

**18.** *Mid Region*, 1 F.3d at 1133.

**19.** *Peters*, 462 F.3d at 1272–73. The *Peters* Court's conclusion that the musicians' availability was "essential" to a successful reorganization was based, in part, on the "unique talents" of musicians and the "special chemistry" of an orchestra. *Id.* However, we do not believe that the Court meant thereby to limit a conclusion of beneficial consideration to such unique circumstances. Where, as here, a claimant's services significantly improve a debtor's chances of a successful reorganization, we believe that *Peters* strongly leads to the conclusion that the claimant here, Enterasys, has satisfied the consideration requirement for administrative priority.

**20.** *Id.* at 1273 n. 5.

**21.** 142 B.R. 640 (S.D.N.Y.1992).

benefit to the estate is misplaced. In *CIS*, the debtor leased computer equipment to a third party, which subsequently subleased the equipment back to debtor, which then sub-subleased the equipment to yet another entity. The district court upheld the bankruptcy court's denial of administrative priority to the original lessee's claim for unpaid sublease payments, on the basis that it had not conferred a benefit on the estate because the debtor's sub-sublease of the equipment had been entirely prepaid pre-petition. Thus, when the petition was filed, the debtor no longer had either any equipment or any right to payment for that equipment. In the present case, the consideration flowing from Enterasys to the estate is neither property nor payment for property. Rather, it is the provision of, or the availability to provide, technical service to the Debtor's customers on its behalf. In this way, the consideration flowed from Enterasys to the Debtor on an ongoing basis, which even the *CIS* court held would have been sufficient for administrative priority.[22]

In this case, the Trustee argues that Enterasys did not, in fact, provide any consideration because: (1) consideration, if any, was supplied to third parties rather than to the Debtor, and (2) the customers never requested any technical services from Enterasys. As discussed previously, the Trustee's contention that the Debtor did not itself benefit from the providing of services to its customers is unrealistic. Although it did not receive the kind of tangible benefit typically granted administrative priority, the Debtor clearly needed and wanted Enterasys to provide, or at least be available to provide, service to its customers. Thus, under the facts of this case, we hold that the Debtor's business was benefitted by Enterasys's providing of ser-

vice to the Debtor's customers. Therefore, the only remaining issue is whether Enterasys actually provided services, given that service was not requested by the Debtor's customers.

The bankruptcy court likened Enterasys's contracts to contracts of insurance. We agree. Just as an insurance policy protects an insured from a specified loss, technical service contracts protect customers from the consequences of technical malfunction. Just as an insured cannot demand a refund of health insurance premiums if he does not need medical care, the Debtor's customers cannot demand a refund of their contract payment because they were able to get by without technical advice. Likewise, just as an independent insurance agency benefits from the coverage provided to its customers by an insurer, the Debtor benefits from the availability of service provided to its customers by Enterasys, without respect to the customers' actual use. Finally, under *Peters*, where the bargained-for service is availability to perform, availability is performance.

## V. CONCLUSION

Either the providing of services under its contracts with the Debtor, or its standing ready, willing and able to provide those services, constitutes a transaction between Enterasys and the debtor-in-possession that benefitted the Debtor in the operation of its business. Therefore, we affirm the bankruptcy court's allowance of the amount of $40,340.20 to Enterasys as a Chapter 11 administrative expense, pursuant to 11 U.S.C. §§ 503(b) and 507(a)(2).

---

**22.** *Id.* at 642 (monthly sub-sublease payments would have conferred a post-petition benefit to the estate by the sublessor).