Henry G. CISNEROS, Secretary of the Department of Housing and Urban Development, Plaintiff

v.

COST CONTROL MARKETING AND SALES MANAGEMENT OF VIRGINIA, INC., et al., Defendants.

Civ. Action No. 89–0042–C.

United States District Court, W.D. Virginia, Charlottesville Division.

Sept. 15, 1994.

Audrey B. Kessner, Sarah E. Canzoneri, Dept. of HUD, Robert S. Whitman, Wash. DC, Eric Johnson Mahr, U.S. Dept. of Justice, Washington, DC, for plaintiff.

Francis T. Eck, Eck, Lewis, Anderson & Collins, Richmond, VA, for Cost Control, Monticello Dev., Peterson, Kujawski, Costenbader & Marley.

Thomas P. Collins, Eck, Lewis, Anderson & Collins, Richmond, VA, for Byron.

Marshall E. Anders, Rosenblum & Anders, P.C., Stroudsburg, PA.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This Court referred this case to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition. The Magistrate Judge filed his Report on July 27, 1994. On August 8, 1994 and August 12, 1994 the defendants filed Objections to the Report and Recommendation. Said objections having been lodged with this court in a timely and appropriate manner, this court is required to undertake a *de novo* determination. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982).

The defendants' liability in this case has been established for some time, but remaining before the court is a decision concerning the character and amount of the final judgment. Magistrate Judge Crigler's July 27, 1994 Report and Recommendation found that this court has the authority to enter final judgment, notwithstanding the current bankruptcy proceedings involving the individual defendants Peterson, Marley, and Costenbader. Furthermore, Magistrate Judge Crigler recommended entering final judgment against the above-named defendants and defendant Kujawski in the amount of $8,648,-048, although he declined to do so on the basis of the plaintiff's motions for sanctions and contempt.[1] This court adopts both the reasoning and the decision set forth in Magistrate Judge Crigler's July 27, 1994 Report and Recommendation.

### I.

The plaintiff instituted this action against the defendants for violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C.

---

1. This court agrees with Magistrate Judge Crigler that holding the defendants in contempt and imposing sanctions, although perhaps justified, would be counterproductive. Given the present entry of final judgment, the only possible sanction would be monetary, thereby detracting from the defendants' ability to meet their restitution obligations. In addition, Magistrate Judge Crigler recommended that the court voluntarily dismiss defendant Thorton Byram from this case. In its accompanying Order, the court also will adopt these recommendations.

§§ 1701–1720, committed during their sales of lots in Lake Monticello. The court entered summary against the defendants for violating the Act's anti-fraud provisions and then turned to the task of structuring a final judgment. *See Kemp v. Cost Control Mktg. & Sales Mgt.*, 790 F.Supp. 1275 (W.D.Va. 1992) (entering interim judgment). Subsequent to the entry of an Interim Judgment Order on April 22, 1992, defendants Peterson, Marley, and Costenbader filed Chapter 7 bankruptcy petitions in the Western District of Pennsylvania. Although such bankruptcy petitions were discharged in January of 1993, the three defendants reopened their bankruptcy cases on May 20, 1994 for the purpose of enjoining the plaintiff from any further proceedings against them. Based upon their bankruptcy cases, these defendants have asserted that this court has no authority to enter final judgment against them. They are wrong.

In general, a bankruptcy petition stays the continuation of a pre-petition judicial action, 11 U.S.C. § 362(a)(1), and the enforcement of a pre-petition judgment against the debtor, 11 U.S.C. § 362(a)(2); however, several exceptions to the stay exist. In addition, upon discharge of a bankruptcy petition, 11 U.S.C. § 524(a)(2) discharges all debts of the bankrupt, again subject to several exceptions. The issue is whether certain such exceptions apply to this case.

■ This court and the bankruptcy court share concurrent jurisdiction to determine whether the automatic stay applies to this proceeding and whether the defendants' debts to the plaintiff are dischargeable. *See Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 387 (3d Cir.1987); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 936 (6th Cir. 1986); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986); *In re Baldwin–United Corp. Litig.*, 765 F.2d 343, 347 (2d Cir.1985). Furthermore, defendants' objections to the contrary notwithstanding, long-standing principles of comity suggest that it is appropriate for this court, rather than the bankruptcy court, to decide the issue because the proceeding was first filed in this court. *See Smith v. McIver*, 22 U.S. (9 Wheat) 532, 535, 6 L.Ed. 152 (1824) ("[I]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it."); *see also United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir.1990); *EEOC v. University of Pa.*, 850 F.2d 969, 972 (3d Cir.1988) (citing *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922)). This court has been handling this case for approximately five years and, therefore, presumably is more familiar than the bankruptcy court with the nature of the action. Consequently, this court is the appropriate forum in which to decide whether the automatic stay applies to this case and whether the defendants' debt to the plaintiff is dischargeable in bankruptcy.

■ The automatic stay imposed by § 362(a)(1) does not apply to "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4). Included in the government's "police or regulatory powers" are situations "where a governmental unit is suing a debtor to prevent or stop violation of fraud ... laws, or attempting to fix damages for violations of such a law...." S.Rep. No. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.S.C.A.N. 5787, 5838. In such a case, the action is not stayed. *Id.* In this case, the defendants violated the Interstate Land Sales Full Disclosure Act (the Act), 15 U.S.C. §§ 1701–1720, which is aimed at halting, deterring, and punishing fraudulent conduct in interstate land sales.[2] Pursuant to its power granted by 15 U.S.C. § 1714, the plaintiff filed this suit for the purpose of punishing the defendants for fraudulent practices and deterring any similar conduct in the future. Based upon the scope of the Act and

---

**2.** In particular, the defendants (1) failed to file with the plaintiff a Statement of Record, in violation of 15 U.S.C. § 1703(a)(1)(A); (2) sold lots without providing purchasers with Property Reports, *id.* § 1707; and (3) engaged in fraudulent sales practices, in violation of both the Act's "anti-fraud provisions," *id.* § 1703(a)(2)(B), (C), and the Act's revocation requirements, *id.* § 1703(b), (c); 24 C.F.R. § 1715.2, .3.

the particular character of this case, suing the defendants for violating the Act is within the plaintiff's "police or regulatory powers." As a result, this action is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4).[3]

■ Furthermore, although a bankrupt's debts generally are discharged when a bankruptcy case is discharged, 11 U.S.C. § 524(a)(2), an exception is made for a debt which is "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss. . . ." *Id.* § 523(a)(7). The character of the plaintiff's monetary recovery in this case, restitution in the form of disgorged profits, clearly is covered by § 523(a)(7). The Supreme Court plainly has held that a restitution obligation is not dischargeable in bankruptcy because it falls within § 523(a)(7). *Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986). Although *Kelly* dealt with criminal restitution, the Court later made clear that § 523(a)(7) applies both to criminal and civil restitution. *See Pennsylvania Public Welfare Dept. v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 2132–33, 109 L.Ed.2d 588 (1990) (stating that § 523(a)(7) codified an exception for both criminal and civil fines).[4]

■ In finding that § 523(a)(7) applies to restitution obligations, the Supreme Court stated that in order to be excepted from discharge, debts must satisfy two requirements: (1) they must be to and for the benefit of a governmental unit; and (2) they

must be penal, rather than pecuniary, in nature. *Kelly,* 479 U.S. at 51–52, 107 S.Ct. at 362. The judgment in this case satisfies both parts of the test. The first prong is satisfied because restitution ensures compliance with the Act and safeguards the public interest in such compliance. "To permit the retention of . . . illicit profits . . . would impair the full impact of the deterrent force that is essential if adequate enforcement of [the Act] is to be achieved." *SEC v. Petrofunds, Inc.,* 420 F.Supp. 958, 960 (S.D.N.Y. 1976).[5] Likewise, the second prong is satisfied because the restitution sought in this case is penal in nature and is not driven by the victims' desire for compensation. The money will be paid to the plaintiff rather than the injured victims, and the judgment will punish the defendants for violations of the Act and deter future violations by the defendants and others. Whether any of the money reaches the victims is immaterial to the § 523(a)(7) analysis. *See Kelly,* 479 U.S. at 52, 107 S.Ct. at 362. Because the automatic stay does not apply to this case and because the defendants' restitution obligation is not dischargeable, this court has authority to enter final judgment.

## II.

The general elements that comprise the final judgment are contained in the Interim Judgment Order entered on April 22, 1992. *See Kemp v. Cost Control Mktg. & Sales Mgt.,* 790 F.Supp. 1275 (W.D.Va.1992). Since that time, the defendants have had twenty-seven months in which to present evi-

---

3. Enforcement of this judgment currently is not an issue before this court. The three defendants who reopened their bankruptcy cases did so for the limited purpose of enjoining this action. As a result, their bankruptcy cases likely will close very soon, thus mooting any issue as to enforcement. The court notes, however, that 11 U.S.C. § 362(b)(5), which excludes the enforcement of money judgments from the exception to the automatic stay, is expressly tied to § 362(a)(2), which only stays enforcement of judgments obtained *before* the filing of a bankruptcy petition.

4. In their objection of August 8, 1994 the defendants suggest that *Davenport* actually supports their position that their obligation to the plaintiff was discharged. In *Davenport,* the Supreme Court held that restitution obligations constitute "debts" as defined in the Bankruptcy Code and

are thus dischargeable in Chapter 13 bankruptcy cases. The Court expressly stated that the debts were dischargeable in Chapter 13 cases because § 523(a)(7) does not apply to that chapter. *See Davenport,* 495 U.S. at 563, 110 S.Ct. at 2133. Chapter 7, pursuant to which the defendants filed their bankruptcy petitions, contains the § 523(a)(7) exception to discharge, and restitution obligations thus are not dischargeable by Chapter 7 cases. *Id.*

5. Although *Petrofunds* concerned an SEC enforcement action, this court already has recognized that the Act is patterned after federal securities laws. *See Kemp,* 790 F.Supp. at 1277 n. 2 (citing *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n,* 426 U.S. 776, 778, 96 S.Ct. 2430, 2433, 49 L.Ed.2d 205 (1976)).

dence to challenge the court's preliminary findings contained in *Kemp*. They have not done so.

■ This court previously ruled that in determining the amount of profits to be disgorged, it will be guided by *SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215 (D.C.Cir.1989). Accordingly, although the plaintiff bears the burden of proving a figure that reasonably approximates the illegal profits received by the defendants, upon satisfaction of that initial burden the defendants are obligated to demonstrate that such amount is not a reasonable approximation of illegal profits received. *Kemp*, 790 F.Supp. at 1280 (citing *First City*, 890 F.2d at 1232). This court already has found that $8,648,048 is a reasonable approximation of the illegal profits received by Cost Control Marketing and Sales Management of Virginia (CCMV), *id.* at 1278–79, and that in the absence of additional evidence "all compensation paid to officers and employees will ... be considered causally related to the violations [of the Act]." *Id.* at 1281 n. 7.

The plaintiff also bore the burden of proving a reasonable approximation of the amount of CCMV's profits passed through to the defendants. *See id.* at 1279–80. The court found, however, that the financial habits of the defendants show that "a substantial amount of profits passed to the individual defendants as a result of their violations." *Id.* This evidence and the principle that in demonstrating the amount of profits for the purpose of disgorgement "the permissible margin of error is substantial," *id.* at 1281, satisfied the court that, in the absence of any contrary evidence, the figure of $8,648,048 is sufficient to discharge the plaintiff's initial burden of proving a reasonable approximation of the defendants' illegal profits.[6] The court delayed the entry of final judgment in order to allow the defendants an opportunity to offer evidence showing that part of that amount was not passed through from CCMV to them.

The defendants have presented absolutely nothing in response to the plaintiff's evidence. Twenty-seven months have passed since the court issued its Interim Judgment Order, and the defendants virtually have ignored it. Not only did they fail to comply with the terms of the Interim Judgment Order, but all except one of them failed even to respond to the court's Order to Show Cause for not complying. Further, the defendants have failed to respond to the plaintiff's two year-old interrogatories and requests for production of documents designed to obtain a more exacting measure of the illegal profits received by the defendants. The defendants contend that they believed that their bankruptcy cases stayed this case. Their bankruptcy cases were closed from January of 1993 until May of 1994, however, and the defendants still disregarded their obligations. Moreover, even if the defendants genuinely believed that these proceedings were stayed during the course of their bankruptcy cases, the court's Order to Show Cause and continued movement toward the entry of final judgment against the individual defendants[7] made clear that it did not necessarily agree. Lastly, the court notes that it does not regard the defendants' failure to respond to the plaintiff's discovery requests as a reason to enter final judgment, but merely as another example of the countless opportunities that the defendants have had to present evidence concerning the amount of illegal profits that they received.

The defendants also contend that this case is affected by a separate class action regarding the same fraudulent land sales at issue here. First, they allege that the class action imposed a stay which prevents this court from entering final judgment. Any stay imposed in that case or any other, however, did not apply to these individual defendants. Secondly, the defendants contend that a set-

---

**6.** The court also notes that CCMV, a company primarily operated by the individual defendants, has declared bankruptcy despite receiving over $8 million in illegal profits. It is more than reasonable to conclude that a vast portion of those illegal profits were passed through to individuals who controlled the company and enjoyed excessive spending patterns while their primary source of income went bankrupt.

**7.** Magistrate Judge Crigler held a status conference concerning the entry of final judgment, and the court has received several pleading from the parties directed to that issue.

tlement effectuated in the class action obviates the need for restitution in this case.[8] The defendants misunderstand the nature of this action. The restitution in this case is a penalty, not compensation to injured victims. That individual victims may have been partly compensated for their losses is irrelevant. Although the plaintiff has expressed its intention to use the restitution paid to it to reimburse the victims for their losses, if it finds that a particular victim has been reimbursed, it may choose to apply any excess to things such as interest, travel to and from the lot, or other related expenses incurred by the victims. *Cf.* 15 U.S.C. § 1709 (listing amounts recoverable in a civil action by an injured person).

No reason exists to delay any longer the entry of final judgment. This case has endured for approximately five years, and the defendants' liability has been established for roughly half of that time. Because the defendants' bankruptcy cases do not prevent the entry of final judgment, and because the defendants have presented no evidence to suggest that the plaintiff's figure is not a reasonable approximation of their illegal profits, final judgment will be entered against the individual defendants in the amount of $8,648,048.

An appropriate Order shall this day issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. The objections to the Report and Recommendation of the United States Magistrate Judge are overruled, and said Report, filed July 27, 1994, shall be, and it hereby is, adopted in its entirety.

2. For the reasons stated in the Magistrate Judge's Report the plaintiff's motion to voluntarily dismiss defendant Thorton Byram, shall be, and it hereby is, granted.

3. For the reasons stated in the Magistrate Judge's Report, the defendants' objec-

tions on bankruptcy grounds to this court's authority to enter final judgment shall be, and they hereby are, denied.

4. For the reasons stated in the Magistrate Judge's Report, the plaintiff's motions for sanctions and contempt shall be, and they hereby are, denied.

5. For the reasons stated in the Magistrate Judge's Report, defendants Peterson, Kujawski, Marley, and Costenbader, jointly and severally, shall be, and they hereby are, ordered to make restitution in the amount of eight million six hundred forty-eight thousand forty-eight and 00/100 dollars ($8,648,048.00), payable to the Department of Housing and Urban Development or its successor agency ("the Department"), in a manner consistent with the terms of this Order.

6. Defendants Peterson, Kujawski, Marley, and Costenbader, as well as all individuals and entities acting in concert or participation with any of them, shall be, and they hereby are, permanently enjoined from violating the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–1720, and its implementing rules and regulations.

7. Defendants Peterson, Kujawski, Marley, and Costenbader shall be, and they hereby are, permanently enjoined from enforcing any obligation to pay in any contract, deed of trust, or note held by these defendants and entered into between any purchaser and any defendant in connection with purchases of lots at Lake Monticello.

8. No later than thirty (30) days following the entry of this Order, defendants Peterson, Kujawski, Marley, and Costenbader, jointly and severally, shall be, and they hereby are, ordered to make a deposit of one hundred thousand dollars ($100,000) with the Department as an initial payment toward the full amount due.

9. No later than ninety (90) days following the entry of this Order, defendants Peterson, Kujawski, Marley, and Costenbader, jointly and severally, shall be, and they hereby are, ordered to pay to the Department the full amount due.

---

**8.** These individual defendants will contribute nothing to that settlement.

10. If full payment is not submitted to the Department within ninety (90) days, defendants Peterson, Kujawski, Marley, and Costenbader, jointly and severally, shall be, and they hereby are, ordered to continue to make payments until the entire amount due is satisfied, and interest shall accrue on any unpaid amount at the Treasury rate until the amount due is paid in full. Defendants Peterson, Kujawski, Marley, and Costenbader shall make payments according to the following formula: each year for the seven (7) years from calendar year 1994 through 2001, each defendant shall remit by May 15 of the following year 25% of the net amount of that defendant's adjusted gross income as reported on that defendant's federal income tax return less any federal, state, and local income taxes paid for that year. If, at the end of seven years the defendants have not satisfied the full amount of the judgment, the defendants shall remain jointly and severally liable for the remainder and shall continue to make payments according to the above formula until the judgment is satisfied in full, and interest shall continue to accrue on any unpaid amount at the Treasury rate until paid.

11. Defendants Peterson, Kujawski, Marley, and Costenbader shall be, and they hereby are, ordered to file an affidavit with the Department beginning thirty (30) days from the entry of this Order and continuing annually until full restitution has been made as described above, containing the following information: (a) all assets and liabilities as of the date that the affidavit is filed; (b) current business and home addresses and telephone numbers; (c) salary earned during each of the preceding twelve (12) months; (d) all income other than salary received during each of the preceding twelve (12) months; and (e) all bank accounts, including names of the banks and branches, account numbers, and current balances.

12. The asset freeze and sequestration imposed by the Order entered on February 14, 1990 shall be, and it hereby is, reinstated pursuant to the same terms contained therein.

13. This court's Interim Judgment Order entered on April 22, 1992 shall be, and it hereby is, superseded by this Final Judgment Order.

14. This case shall be, and it hereby is, dismissed and stricken from the docket of the court.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record and to Magistrate Judge Crigler.