In re Deborah R. DOLEN, Debtor.

No. 01–10209–8C3.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 17, 2001.

John D. Goldsmith, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for Debtor.

Michael P. Mora, Washington, DC, for FTC.

Edmund S. Whitson, III, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, for Receiver.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

## ORDER ON CROSS–MOTIONS AS TO APPLICABILITY OF THE AUTOMATIC STAY

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This case presents unsettled issues concerning the scope and extent of the Section 362(b)(4) police and regulatory exception to the automatic stay. It arises in the context of a Chapter 13 case filed by the debtor after being named as a defendant in a Federal Trade Commission consumer fraud enforcement action in the district court. The district court had entered a preliminary injunction against the debtor and other defendants before the debtor came to the bankruptcy court. Thus, this case presents questions as to the extent to which the Federal Trade Commission can enforce the terms of that preliminary injunction in light of the automatic stay.

The case came on for hearing on June 28, 2001, of cross-motions as to the applicability of the automatic stay. These motions are (1) the debtor's second amended emergency motion to enforce the automat-

ic stay and to permit debtor to make regular payments to creditors (Document No. 14); (2) the Federal Trade Commission's amended notice of related proceedings and motion to stay debtor's emergency motion to enforce the automatic stay (Document No. 17); and FTC's objection to debtor's emergency motion to enforce automatic stay and make regular payments to creditors (Document No. 23). At the hearing, the parties requested the opportunity to file post-hearing briefs. The court has also considered these additional papers (Documents Nos. 26 and 27).

Viewing the Section 362(b)(4) exception to the automatic stay in the context of this dispute and the district court's preliminary injunction, the court concludes that any actions taken by the Commission to enforce the preliminary injunction so as to prohibit the debtor from using her post-petition, non-injunction related income to pay family living expenses and to make her plan payments are prohibited by the automatic stay and are not excepted from it. The court is not persuaded by the arguments to the contrary advanced by the Federal Trade Commission. Otherwise, however, the Federal Trade Commission may enforce the preliminary injunction as a valid exercise of its police and regulatory powers that are excepted from the automatic stay.

## I.

Although the parties' papers and arguments are filled with disagreements on substantially all aspects of the case, there appears to be no dispute concerning the following facts upon which the court can decide the very narrow issues before it.

The debtor, Deborah Dolen, is one of several defendants in a consumer fraud action filed by the Federal Trade Commission ("Commission" or "FTC") in the district court, *Federal Trade Commission v.* *Para–Link International, Inc., et al.,* Case No. 8:00–CV–2114–T–17TBM. The Commission filed that action pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), seeking a permanent injunction and ancillary equitable relief, including restitution and disgorgement. In the complaint, the Commission alleged that the defendants violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by making false and deceptive representations concerning their work-at-home business opportunity program. This program involved the marketing and sale of a "paralegal work-at-home kit" to prepare bankruptcy and divorce petitions for pro se litigants.

The district court entered a temporary restraining order and a preliminary injunction. In the preliminary injunction, entered on February 28, 2001, the district court, among other things:

a. preliminarily enjoined the continued operation of the "paralegal work-at-home kit" business and the sale of the kits;

b. preliminarily enjoined all disposition and transfer of the defendants' property, in effect "freezing" all such property; and

c. appointed a permanent receiver to control and administer the assets and affairs of the corporate defendants.

The preliminary injunction is broadly worded. By its terms, the provisions enjoining the disposition and transfer of assets cover "both existing assets and assets acquired after the effective date of this Order." Preliminary Injunction at 5, § II.E. Thus, it precludes the debtor from spending any income or wages she receives in the future, even that derived from sources not connected with the fraud alleged by the Commission.

The district court granted this preliminary injunction because:

Unless the Court continues the asset freeze as to all of the Defendants, and permanently appoints the Receiver for [the corporate defendants], there is a substantial likelihood that Defendants will conceal, dissipate, or otherwise divert their assets, and defeat the Court's ability to grant effective final relief in the form of equitable monetary relief for consumers.

Preliminary Injunction at 2. At the hearing, counsel for the Commission further explained that the reason the preliminary injunction covered the income or wages not connected with the alleged fraud was "to secure the District Court's ability to ultimately provide monetary relief to consumers." (Document No. 25, 6/29/01 hearing transcript at 52).

The debtor lives with her three children in a home at 6647–6649 Renssalaer Drive in Bradenton, Florida. The home is titled in the name of the debtor's mother. Notwithstanding the title to the home, the debtor claims that she and her mother are co-owners of the home, that the deed into her mother only is a mistake, and that the home is her exempt homestead. The Commission disputes these contentions and claims to trace the proceeds of the alleged fraud into the home.

On May 30, 2001, a United States magistrate judge issued a report and recommendation in the action pending in the district court. In it, the magistrate judge recommended that the district judge enter an order authorizing the receiver to sell the home and pay the mortgages (and presumably other liens and encumbrances of record) and to escrow any remaining proceeds for the benefit of the consumer/victims.

On the same day, the debtor filed in this court an individual petition under Chapter 13 of the Bankruptcy Code. In her schedules, the debtor lists monthly income of $5,000 from her work as a web designer and database architect for a business in Quebec, Canada. She also lists monthly widow benefits of $364. (Document No. 8, Schedule I). The debtor lists monthly expenses for herself and her children of $4,300, including mortgage payments of $3,200 and real estate taxes of $400. (Document No. 8, Schedule J). She shows net disposable income of $1,064. (*Id.*) In her schedules, the debtor also shows secured indebtedness to the mortgage holders on the Renssalaer Drive home, unpaid ad valorem real estate taxes, and unsecured debt, including debts in unknown amounts to the Commission and the Internal Revenue Service (Document No. 8, Schedules D, E, and F).

The debtor filed a Chapter 13 plan (Document No. 10). Pursuant to the plan, the court has entered a pre-confirmation order requiring the debtor to make monthly payments to the Chapter 13 trustee for the benefit of the debtor's creditors in the amount of $1,006 beginning on July 15, 2001 (Document No. 22). In the plan, the debtor proposes to pay the mortgage arrearages on the Renssalaer Drive home to cure and reinstate the mortgages, pay the ad valorem real estate taxes, and pay unsecured creditors. Because the deadline for creditors to file proofs of claim has not passed, it is not yet possible to evaluate the feasibility of the debtor's plan.

## II.

At the hearing, the debtor clarified the extent of the relief she is seeking in her motion. With that clarification, the debtor seeks two things. First, the debtor seeks a declaration from the court that the automatic stay provided by Section 362 of the Bankruptcy Code precludes the Commission from enforcing the preliminary injunction to prevent the debtor from spending her post-petition income to pay her family living expenses and Chapter 13 plan pay-

476

ments. The debtor concedes that the conduct prohibition provisions of the preliminary injunction are not affected by the automatic stay. She also concedes that the provisions of the preliminary injunction freezing the prepetition assets or empowering the receiver are not affected by the automatic stay.

Second, she seeks a declaration by the court that the automatic stay precludes the Commission and the receiver from imposing an equitable lien on the Renssalaer Drive home and selling the home to foreclose the lien before the merits of the district court action are first determined in the Commission's favor.

In its papers, the Commission opposes the relief requested by the debtor. The Commission argues that the automatic stay is not applicable to any action it may take to enforce the terms of the district court's preliminary injunction or to seek from the district court a pre-judgment order of sale of the Renssalaer Drive home. In addition, the Commission asks this court to abstain from determining the issues raised by the debtor. In this regard, the Commission contends that the district court is in a better position to determine the effect of the automatic stay than is this court.

Although the issues framed by the parties are perhaps properly the subject of an adversary proceeding under F.R.B.P. 7001(9), the parties have chosen to proceed by motion in a contested matter. F.R.B.P. 9014. The parties having joined issue, the court will determine the issues in the procedural context the parties created.

## III.

■ Logically, the court must first consider the Commission's request for abstention.

■ This court has jurisdiction of the parties and the subject matter pursuant to 11 U.S.C. §§ 101 *et seq.*, 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference entered by the district court. The applicability and scope of the automatic stay is a core matter within the meaning of 28 U.S.C. § 157(b)(2). The automatic stay is central to a bankruptcy case. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000).

■ The district court has concurrent jurisdiction with the bankruptcy court to determine the extent to which the Section 362 automatic stay limits the actions of the Commission in its ability to pursue the pending district court action. *Sea Span Publications, Inc. v. Greneker (In re Sea Span Publications, Inc.)*, 126 B.R. 622, 624 (Bankr.M.D.Fla.1991).

■ In the interest of comity, the Commission asks that the bankruptcy court abstain from determining the applicability of the automatic stay pursuant to 28 U.S.C. § 1334(c)(1). "Section 1334(c) summarizes and incorporates federal nonbankruptcy abstention principles." *Slater v. Town of Albion (In re Albion Disposal, Inc.)*, 217 B.R. 394, 411 (W.D.N.Y.1997). "Foremost among those principles is the concept that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Id.*

The Commission first argues that the district court evidenced its intention to assert its jurisdiction as to this issue—and to trump the bankruptcy court's jurisdiction—by entering an order to respond (District Court Case Document No. 102) on June 1, 2001. That order to respond directed the parties to file a response to the debtor's suggestion of bankruptcy addressing whether the automatic stay applies to any or all defendants in the district court action.

This court declines to read the district court's order so expansively. That order instead suggests that the district court was simply seeking clarification as to which of the parties in the district court action are affected by the debtor's pending bankruptcy case. This clarification is necessary because the suggestion of bankruptcy form filed in the district court unfortunately appears to imply that the automatic stay precludes the continuation of the district court action in its entirety instead of affecting only actions taken as against the debtor. Thus, the court reads nothing into the district court's order suggesting that the district court desires that the bankruptcy court refrain from addressing these issues.

■ The Commission next argues that *Cisneros v. Cost Control Marketing & Sales Management of Virginia, Inc.*, 862 F.Supp. 1531, 1533 (W.D.Va.1994), supports abstention by the bankruptcy court when the district court action was filed first. Such a broad reading of *Cisneros* would mean that the bankruptcy court would always defer its determination of the applicability and scope of the automatic stay to another court if that court had jurisdiction over an earlier filed action against the debtor, a very common factual scenario. If such were the case, abstention would indeed be the rule rather than the exception. Instead, the bankruptcy court must inquire whether "there are 'exceptional circumstances' that justify [the bankruptcy court's] surrendering [its] jurisdiction." *Albion Disposal*, 217 B.R. at 411.

In *Cisneros*, 862 F.Supp. at 1533, the defendants sought to stay the entry of final judgment by the district court in a statutory action for fraud by reopening their closed bankruptcy cases. The action in the district court had proceeded for many years, and the defendants' liability had been determined long before. The district court decided to exercise its concurrent jurisdiction to determine the extent of the automatic stay because it had more familiarity with the action than the bankruptcy court.

The *Cisneros* case is, however, very different on its facts from this case. The bankruptcy cases at issue in *Cisneros* were closed Chapter 7 liquidation cases that were reopened for the sole purpose of seeking to enjoin the entry of judgment by the district court. In all other respects, the bankruptcy cases had been concluded, the estates administered, and the debtors discharged. In *Cisneros*, the bankruptcy court's interest in advancing the goals of the Bankruptcy Code was therefore minimal, particularly when weighed against the district court's long history in the case.

In contrast, the debtor here has an active Chapter 13 bankruptcy case that she has filed to reorganize her debts so as to pay all her creditors on their claims as may be ultimately determined. The applicability and extent of the automatic stay as to the district court action is central to the administration of this bankruptcy case because it is fundamental to the Chapter 13 readjustment process which cannot be facilitated without it. *See* 3 L. King, *Collier on Bankruptcy*, ¶ 362.03[2] at 136–14 (15th ed. rev.2001)["In reorganization cases, the stay is particularly important in maintaining the status quo and permitting the debtor in possession or trustee to attempt to formulate a plan or reorganization."].

It is also difficult to conceive how the bankruptcy case can be bifurcated, as the Commission suggests, deferring to the district court to decide some issues of case administration while expecting the bankruptcy court to decide others. In the context of this case, dividing the responsibility for determining issues so integral to the administration and confirmation processes

would effectively destroy this court's ability to perform the function for which it was created.

 This court exists as a unit of the district court to decide the fundamental bankruptcy administration issues the parties have submitted to it. *See* 28 U.S.C. §§ 151 *et seq.* For these reasons, the court concludes that it should decline the Commission's request that it abstain from determining the extent of the automatic stay.

IV.

Having determined that this court should not abstain from deciding the issues, the court must next determine whether the automatic stay provided by Section 362 of the Bankruptcy Code precludes the Commission from enforcing the preliminary injunction to prohibit the debtor from using her post-petition income— income that is not related to the enjoined activity—*to pay family living expenses and Chapter 13 plan payments.*

Section 362 of the Bankruptcy Code provides that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

 Thus, upon the filing of a bankruptcy petition, Section 362(a) of the Bankruptcy Code operates to stay automatically the commencement or continuation of "virtually all proceedings against a debtor, including enforcement of judgments, that were or could have been commenced before the debtor filed for bankruptcy." *Securities & Exchange Commission v. Brennan,* 230 F.3d 65, 70 (2nd Cir.2000). In that case, the court explained the purpose of the automatic stay:

The general policy behind [Section 362] is to grant complete, immediate, albeit

temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected. In addition, the automatic stay provision is intended "to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."

*Id.* (Internal citations omitted).

■ Section 362(b) of the Bankruptcy Code contains a list of exceptions to the automatic stay for particular actions that would otherwise be stayed under Section 362(a). These exceptions should be read narrowly. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Association,* 997 F.2d 581, 590 (9th Cir.1993).

Section 362(b)(4) provides an exception to the automatic stay for governmental units or organizations to exercise their police and regulatory powers. *Brennan,* 230 F.3d at 71. That section provides that:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

* * * *

(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

* * * *

This section was amended in 1998. The 1998 amendment combined what were then paragraphs (b)(4) and (b)(5) into one paragraph (b)(4), expanded the scope of the exception by adding acts stayed under paragraphs (a)(3) and (a)(6), and "added organizations exercising authority under the Chemical Weapons Convention as beneficiaries of the exception to the stay." 3 *Collier, supra,* ¶ 362[5][b] at 362–58 and 362–59. "These three changes introduced apparently unintentional ambiguities, which are best resolved by reference to the pre-amendment version." *Id.*

The first ambiguity is whether the combination of paragraphs (b)(4) and (b)(5) now permits the enforcement of all judgments, including money judgments. One commentator suggests that "the governmental unit still may commence or continue any police or regulatory action, including one seeking a money judgment, but it may enforce only those judgments and orders that do not require payment or authorize the government to exercise control over property of the estate." *Id.* at 362–60.

The second ambiguity is whether the addition of paragraph (a)(3) to the paragraph (b)(4) exception permits any act to obtain possession or exercise control over property of the estate. One commentator believes, however, that this addition should be read more restrictively and in tandem with the modifications to paragraphs (b)(4) and (b)(5) so that only acts taken by a governmental unit to enforce a "non-money judgment" would be excepted. *Id.*

Finally, there is some question as to the scope of the paragraph (b)(4) exception. As written, it could be argued that the amendment operates to restrict the exception only to those organizations exercising authority under the Chemical Weapons Convention and no other governmental units or organizations. It can also be read to broaden the scope of the exception to add organizations exercising authority under the Chemical Weapons Convention to other government units that have always been beneficiaries of the exception. Commentators point out that, if the amendment is interpreted restrictively to apply only to those organizations exercising authority under the Chemical Weapons Convention, it would "eviscerate the automatic stay provisions for police and regulatory power enforcement and was surely not intended." *Id.* at 362–61. *See also* 2 W. Norton, *Norton Bankruptcy Law & Practice,* ¶ 36:18 at 36–61 (2d ed. rev.2001)[A reading of the amended paragraph (b)(4) to limit governmental units or organizations to only those organizations exercising authority under the Chemical Weapons Convention "is difficult to comprehend absent clear legislative intent to severely restrict the usefulness of Code § 362(b)(4)."].

With this background, the court now turns to the issues presented by the Section 362(b)(4) exception.

### A.

■ The defendant asserts that only those governmental units or organizations that are exercising authority under the Chemical Weapons Convention may commence or continue action against the debtor in furtherance of their police and regulatory powers pursuant to the paragraph (b)(4) exception. The Commission, of course, is not exercising its authority under the Chemical Weapons Convention. The debtor argues, therefore, that the

paragraph (b)(4) exception has no application to this case and the Commission is not entitled to take any action against the debtor or property of the estate proscribed by Section 362(a) without first obtaining a modification of the automatic stay. The debtor cites *Finley v. Mississippi Department of Public Safety,* 237 B.R. 890, 895–96 (Bankr.N.D.Miss.1999), in support of her argument. In that case, the court held that the Mississippi Department of Public Safety was not a governmental unit or organization within the meaning of Section 362(b)(4) because it was not exercising its authority under the Chemical Weapons Convention. *Id.*

The court declines to adopt the reasoning of the *Finley* case as to the scope of the Section 362(b)(4) exception. Instead, the court will adopt the reasoning of the commentators and interpret Section 362(b)(4) as adding organizations or governmental units exercising authority under the Chemical Weapons Convention to those organizations and governmental units that have formerly fallen within the ambit of the exception. Accordingly, the court concludes that the FTC is a governmental unit or organization within the meaning of Section 362(b)(4). Thus, Section 362(b)(4) provides an exception to the automatic stay for the Commission in certain circumstances as defined in that section when the Commission is exercising its regulatory functions.

### B.

The Commission argues that, once the court determines that the district court action is within its police and regulatory power, any act taken in that action that would otherwise be prohibited by Section 362(a)(1), (2), (3), or (6) of the Bankruptcy Code, including the enforcement of the preliminary injunction enjoining the debtor's use of post-petition earnings, is ex-

cepted from the automatic stay provided that the Commission takes no action to enforce a money judgment. The debtor asserts that the Commission's interpretation of the Section 362(b)(4) exception would, for all practical purposes, deny her the right to reorganize under the Bankruptcy Code and the court should therefore construe the exception more narrowly.

The legislative history of Section 362(b)(4) shows that Congress intended this exception to apply to suits by governmental units "to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar regulatory laws." S.Rep. No. 989, 96th Cong., 2d Sess. 52, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5838. The police power, however, "must be distinguished, case-by-case if necessary, from other governmental powers and activities such as raising revenue ...." *Goff v. Oklahoma,* 159 B.R. 33, 40 (Bankr.N.D.Okla.1993). Courts must first determine, therefore, whether the action at issue "relates to a matter of public safety and health or primarily to the protection of the government's pecuniary interest in the debtor's property." *Berg v. Good Samaritan Hospital,* 198 B.R. 557, 561 (9th Cir. BAP 1996).

The case law is clear that an action to enjoin illegal conduct and to obtain restitution for that conduct falls squarely within the scope of the paragraph (b)(4) exception. *Federal Trade Commission v. Austin Galleries of Illinois, Inc.,* 1991 WL 18430, 1991 U.S. Dist. Lexis 1223 [exception to automatic stay allowed the entry of judgment but precluded enforcement]; *Federal Trade Commission v. American Standard Credit Systems, Inc.,* 874 F.Supp. 1080, 1091 (C.D.Cal.1994)[action to enjoin conduct and obtain restitution excepted from automatic stay]; *Ngan Gung Restaurant, Inc. v. New York (In re Ngan Gung Restaurant, Inc.),* 183 B.R. 689, 695 (Bankr.S.D.N.Y.1995) [government actions under both federal and state labor laws seeking restitution excepted from automatic stay].

Thus, there can be no question here that the automatic stay does not preclude the Commission from prosecuting its action against the debtor in the district court. The Commission may engage in discovery, participate at trial to obtain an adjudication of its claims on the merits, and, if the debtor is found to have engaged in illegal conduct, determine and fix restitution damages for that conduct. Similarly, there can be no question that the automatic stay does not preclude the Commission from enforcing the conduct prohibition provisions of the preliminary injunction entered by the district court before the filing of the bankruptcy case. Likewise, there can be no question that the automatic stay does not preclude the Commission from enforcing the preliminary injunction to the extent that it freezes and prohibits the debtor's dissipation of assets in existence before the filing of the bankruptcy case that are related to the alleged fraud.

What is less clear is whether the automatic stay precludes the Commission from enforcing the preliminary injunction so as to exercise control over the debtor's non-injunction related post-petition earnings—that are clearly property of the bankruptcy estate—without first seeking and obtaining a modification of the automatic stay. The Commission relies on a number of cases to support the premise that a preliminary injunction that enjoins the debtor's use of her post-petition earnings is excepted from the automatic stay.

The Commission principally relies on *Federal Trade Commission v. R.A. Walker & Associates, Inc.,* 37 B.R. 608 (D.D.C.

1983). In *R.A. Walker*, the district court held that it had "the jurisdiction and authority to issue and continue" a freeze of the defendants' assets notwithstanding a pending bankruptcy case. *Id.* at 609–10. The court determined that the freeze order offered the best protection against dissipation of the assets because the defendants would otherwise be "free to dispose of their assets virtually at will." *Id.* at 612.

The Commission also cites two other cases in support of its position. In *Securities & Exchange Commission v. First Financial Group of Texas*, 645 F.2d 429, 438 (5th Cir.1981), the court held that the appointment of a receiver was a necessary ancillary form of relief within the police and regulatory powers of the SEC. Similarly, in *Commodity Futures Trading Commission v. Co Petro Marketing Group, Inc.*, 700 F.2d 1279, 1283 (9th Cir. 1983), the court held that allowing the district court to enforce its preliminary injunction by directing the return of monies paid by the debtor to an attorney fit squarely within the police and regulatory power exception because it was an order to enforce an injunction rather than an action taken to collect a money judgment.

Upon a superficial reading of these cases, one could conclude that a governmental unit or organization has an unfettered right to take action against property of the estate if the proceeding itself is within the police or regulatory powers of the governmental unit or organization. None of these cases, however, presented the exact issue before this court, that is, whether a governmental unit or organization in furtherance of its police or regulatory powers can attach post-petition

earnings not related to the activity being regulated by enjoining the debtor's use of those earnings. None of these cases included within the assets at issue an individual debtor's post-petition earnings. Instead, the assets were fixed at the time of the bankruptcy filing.[1]

In addition, each of these cases can be read more restrictively and in harmony with the principles that underlie the Bankruptcy Code. In *R.A. Walker*, 37 B.R. at 609–10, for example, the court made clear that its action was a temporary measure, pending the appointment of a trustee in bankruptcy or a receiver. The court was unconcerned that the preliminary injunction might prefer the plaintiff over the debtor's other creditors not party to the district court action because "the distribution of [the] assets which are ultimately determined to be part of the 'property of the estate' may still be made by the bankruptcy court." *Id.* at 611–12. Similarly, in *First Financial Group of Texas*, 645 F.2d at 440, the court noted that the appointed receiver was obligated pursuant to Section 543 of the Bankruptcy Code to preserve the debtor's property and deliver it to the bankruptcy trustee. In *Co Petro Marketing Group*, 700 F.2d at 1283, the court likewise relied on the assumption that directing an attorney to return monies paid to it by the debtor would ultimately "aid the receiver in collecting and preserving property of the estate." In each of the cases, therefore, it is clear that the court viewed its actions as furthering rather than inhibiting the administration of the bankruptcy estate.

In contrast to these cases, acts by the Commission in this case to enforce the preliminary injunction enjoining the debt-

---

1. These cases, therefore, support the undisputed proposition that the Commission's acts in enforcing the preliminary injunction to enjoin the debtor's use of assets in existence

before the filing of the bankruptcy petition are excepted from the automatic stay pursuant to Section 362(b)(4).

or's use of her post-petition income would not further the administration of the debtor's bankruptcy case. To the contrary, it would make it impossible to administer the case and for the debtor to confirm a plan; the case would fail immediately at its inception.

Chapter 13 requires that the debtor file a plan within 15 days of the date the bankruptcy petition is filed. 28 U.S.C. § 1321; F.R.B.P. 3015(b). The debtor must thereafter commence making plan payments to the Chapter 13 trustee within 30 days of the filing of the plan. 28 U.S.C. § 1326(a)(1). If the automatic stay does not preclude a governmental unit from enforcing a preliminary injunction that prohibits the debtor's ability to utilize his or her post-petition earnings, the debtor would have no funds to make the plan payments and the court would be required to dismiss the case promptly for this failure to make plan payments. 11 U.S.C. § 1307(c).

This result would dramatically undercut the ability to reorganize under the auspices of the Bankruptcy Code of any debtor who is involved in litigation with a governmental unit or organization that has the statutory ability to obtain a preliminary injunction such as the one at issue here. This result would be repugnant for policy reasons.

Although each of the cases cited by the Commission was decided before the 1998 amendment that expanded the Section 362(b)(4) exception to include acts taken to obtain property of the estate, it is unlikely that Congress intended its expansion to foreclose the debtor's ability to reorganize under the Bankruptcy Code. The Commission, however, argues that this result was accepted by Congress when it amended the statute. It argues that the exception permits governmental units:

... to prevent fraud through injunctive relief obtained in District Court proceedings, that that exception includes specifically the imposition of an asset freeze including all matters attendant to that which is restricting the ability of a defendant to use its assets, that the exception covers the enforcement of those types of orders and, of course, it also covers a receivership order. And that is how Congress harmonized the statute.

(Document No. 25, 6/29/01 hearing transcript at 48–49).

The better view, however, is that it is the money judgment provision in Section 362(b)(4) that balances "the government's need to enforce its police or regulatory power with the estate's need to preserve its assets for the reorganization of the debtor." 3 *Collier, supra,* ¶ 362.05[5][b] at 362–64.2. One commentator pointed out that "enforcement of a money judgment would give the governmental unit an unfair advantage over other creditors, would effectively subvert the scheme of priority set forth in section 507, and would effectively deny to the debtor the benefits of discharge." *Id.* at 362–59 (Footnotes omitted). If the court were to accept the Commission's argument and conclude that the Commission's actions in enforcing the preliminary injunction enjoining the debtor's use of her post-petition income are excepted from the automatic stay, the resulting outcome would similarly give the Commission an unfair advantage over other creditors, subvert the scheme of priority set forth in Section 507, and deny to the debtor the benefits of reorganization and discharge.

Absent statutory or other legal authority or the ability to grant final equitable relief, of course, a federal court has no inherent equitable power to attach a defendant's assets before judgment as a means of in-

suring that the plaintiff can enforce a money judgment once obtained. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999). Even when specific authority exists for such pre-judgment attachment, as it does in the Commission's enforcement action in the district court, "[t]he general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *Dixie Carriers, Inc. v. Channel Fueling Service, Inc. (In re Fredeman Litigation)*, 843 F.2d 821, 824 (5th Cir. 1988).

In *De Beers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 220, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945), for example, the Court found that a preliminary injunction freezing the defendant's assets dealt "with a matter lying wholly outside the issues in the suit" and thus was impermissible. Similarly, in *Federal Savings & Loan Insurance Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir.1987), the court of appeals remanded the case to the district court to modify its preliminary injunction to exclude assets not subject to equitable remedies. The court suggested that assets should be excluded from the preliminary injunction if the defendants could demonstrate that the assets "were acquired at a time or through such means that there is no likelihood that they were acquired from the ill-gotten salaries, bonuses, etc. subject to the preliminary injunction." Id. *See also Reebok International, Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 561 n. 11 (9th Cir.1992)[although not asked to decide the issue, court questioned whether preliminary injunction ancillary to a restitution claim was overreaching in its scope].

To the extent that the Commission seeks to enforce the preliminary injunction to enjoin the debtor's use of her post-petition earnings, it goes beyond "a reasonable measure to preserve the status quo pending final determination" of the merits of the district court action. *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287–88, 61 S.Ct. 229, 85 L.Ed. 189 (1940). It is, instead, an act to effectuate a pre-judgment attachment of monies wholly unrelated to the illegal conduct about which it complains in the district court action. The pre-judgment attachment of these monies is not in furtherance of the disgorgement of proceeds from alleged illegal acts. Instead, as counsel for the Commission candidly admitted at the hearing, the Commission seeks to enforce the preliminary injunction in this manner *"to secure the District Court's ability to ultimately provide monetary relief to consumers."* (Document No. 25, 6/29/01 hearing transcript at 52)(Emphasis added). Thus, the Commission seeks to attach these funds to satisfy ultimately a money judgment that provides a restitution remedy to those harmed by the illegal acts. This admission is consistent with the actual text of the preliminary injunction that provides:

> Unless the Court continues the asset freeze as to all of the Defendants, and permanently appoints the Receiver for [the corporate defendants], there is a substantial likelihood that Defendants will conceal, dissipate, or otherwise divert their assets, and defeat the Court's ability *to grant effective final relief in the form of equitable monetary relief* for consumers.

Preliminary Injunction at 2 (Emphasis added). The Commission's enforcement of the preliminary injunction as against the debtor's post-petition earnings is therefore equivalent to an action taken to enforce a money judgment. *See Penn Terra Limit-*

*ed v. Department of Environmental Resources,* 733 F.2d 267, 275 (3d Cir.1984) [seizure of property is paradigm action to enforce money judgment that is proscribed by automatic stay].

The policy considerations that are implicated by the preclusion of an act to enforce a money judgment without first obtaining modification from the automatic stay are even more strongly implicated when a creditor takes that action against assets unrelated to the underlying action in the district court before even obtaining its judgment on the merits.

In *Securities & Exchange Commission v. Brennan,* 230 F.3d 65 (2d Cir.2000), the court discussed the significance of the collection of a money judgment in the context of the Section 362(b)(4) exception. The court wrote:

> [C]ourts have drawn the line [at entry of judgment] because that is the most logical place for it. When the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity—it is attempting to curb certain behavior (such as defrauding investors, or polluting groundwater) by making the behavior that much more expensive. It is this added expense that deters a party from defrauding or polluting—not the identity of the entity which it must eventually pay. Accordingly, up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or

regulatory capacity—in the public interest, it is burdening certain conduct so as to deter it. However, once liability is fixed and a money judgment has been entered, the government necessarily acts only to vindicate its own interest in collecting its judgment. Except in an indirect and attenuated manner, it is no longer attempting to deter wrongful conduct. It is therefore no longer acting in its "police or regulatory" capacity, and the exception does not apply.

It is clear that, in this narrow and unusual context, the court must draw the line before the entry of the money judgment because the Commission's acts in enforcing the preliminary injunction to enjoin the debtor's use of her post-petition income that is unrelated to the illegal conduct at issue in the district court proceeding are acts equivalent to enforcing a money judgment. Actions taken by the Commission to enforce its preliminary injunction as against the debtor's post-petition non-injunction related earnings are therefore not excepted by Section 362(b)(4) from the automatic stay.

 Alternatively, to the extent that the statutory scheme permits the Commission preemptively to sequester assets of the debtor that do not derive from the acts about which the Commission complains in the district court action, the Commission's action is wholly intended to vindicate its own interest in collecting its judgment and is pecuniary in nature.[2] It is an action to

---

2. The Commission represented at the hearing and in its papers that it believes some or all of the debtor's post-petition earnings are derived from illegal acts in violation of the conduct prohibition of the preliminary injunction. The Commission further represented that it has filed a motion in the district court to hold the debtor in civil contempt for those acts, among other things. The district court has not yet determined that motion. Other than these statements by the Commission, howev-

er, there is nothing in the record that would provide an evidentiary basis for a finding that the debtor's post-petition income derived from the debtor's fraudulent conduct.

For purposes of this order, therefore, the court assumes that the debtor's post-petition income is unrelated to the fraudulent conduct at issue in the district court action. Nothing in this order, however, precludes the Commission from continuing to pursue its motion for civil contempt or from pursuing other

collect a debt rather than an action taken in furtherance of the exercise of its regulatory powers. Accordingly, that action is not within the scope of the Section 362(b)(4) exception.

For these reasons, the debtor may use her post-petition earnings as disclosed in Schedule I, to pay her monthly expenses listed in Schedule J, and her plan payments as proposed in her Chapter 13 plan (Document No. 10). The court can conceive of no other result. Unless this is the law, this debtor and similarly situated debtors would be unable to reorganize their debts, especially through a Chapter 13 bankruptcy case.[3]

In addition, if a debtor is unable to use post-petition income to reorganize under the Bankruptcy Code, the creditor that has attached the post-petition income will have effectively preferred itself to the detriment of all other creditors not party to that action. That preferment would violate the most fundamental principle of bankruptcy law, the principle of "equality of distribution among creditors of the debtor." *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1355 (5th Cir. 1986), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6138.

On the other hand, the result reached here—that the debtor's post-petition, non-injunction related income is protected by the automatic stay—serves to advance bankruptcy principles in harmony with the policy issues at play in the district court action. This result will not provide a "haven for wrongdoers" or allow the debtor to attack collaterally the district court's order as feared by the Commission. *Bilzerian v. Securities & Exchange Commission,* 146 B.R. 871, 873 (Bankr.M.D.Fla.1992). Although the debtor remains in possession of her post-petition earnings, she "is required to act in the manner of a trustee, for the benefit of creditors who are beneficiaries of this trust estate." *Goff,* 159 B.R. at 41. The Commission, as a party in interest, is similarly entitled to participate fully in the bankruptcy case.

## V.

The court must next determine whether the automatic stay precludes the Commission and receiver from seeking to impose an equitable lien on the Renssalaer Drive home in the district court action and enforcing the lien through the sale of the property, all before the district court action is determined on its merits.

The debtor contends that the property is her homestead and is included within her bankruptcy estate. The debtor argues, therefore, that the home is protected from sale. The Commission asserts that the home is not the debtor's homestead because it is not titled in her name. The Commission argues that, even if the home

---

steps to enforce the conduct prohibition provisions of the preliminary injunction. If it is determined in the context of those motions that the debtor's income is indeed derived from fraudulent acts in violation of the preliminary injunction, nothing in this order would preclude the Commission from pursuing that contempt or seeking further equitable remedies against that income.

3. The Commission points out that the preliminary injunction provides a mechanism for the debtor to obtain the use of her post-petition earnings by first giving notice of her intentions with respect to these funds to the Commission and then obtaining approval from the district court. This mechanism does not overcome the fact that the automatic stay precludes the Commission from taking any act to enjoin the debtor's post-petition income unrelated to the illegal acts at issue in the district court action. It is the Commission that must take affirmative steps to seek relief from stay to enforce the preliminary injunction in this narrow context.

is the debtor's homestead, it is entitled to assert an equitable lien on the property and to liquidate the collateral by foreclosing that lien because the home was acquired and maintained with monies derived from the debtor's illegal conduct. *See, Havoco of America, Ltd. v. Hill*, 790 So.2d 1018 (Fla.2001); *Palm Beach Savings & Loan Association v. Fishbein*, 619 So.2d 267, 271 (Fla.1993).

 There is substantial authority for the proposition that the liquidation of estate assets is not excepted from the automatic stay by Section 362(b)(4). *See, e.g., State of Mo. v. Bankruptcy Court for E.D. of Arkansas*, 647 F.2d 768, 773 (8th Cir. 1981) [state's attempt to liquidate grain not excepted from automatic stay]; *Ngan Gung Restaurant*, 183 B.R. at 694 ["Actual collection of ... back pay and liquidated damages claims must proceed according to normal bankruptcy procedures."]. It is clear, therefore, that any action taken by the Commission to liquidate property of the estate is precluded by the automatic stay.

 The Renssalaer Drive home, however, is not property of the estate. The debtor claimed the home as exempt in her bankruptcy schedules and in so doing removed it as property of the estate.[4] *Owen v. Owen*, 500 U.S. 305, 307–08, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) ["[a]n exemption is an interest *withdrawn from the estate* (and hence its creditors) for the benefit of the debtor."] (Emphasis added). At best, the home is merely property of the debtor. Accordingly, the Commission's ability to impose an equitable lien and sell *property of the estate* pursuant to

the Section 362(b)(4) exception is not at issue in this case.

Assuming that the home is property of the debtor, the court will next turn to the question of whether the Section 362(b)(4) exception allows the Commission to seek the imposition of an equitable lien on the property and the enforcement of that lien through sale of the property. A plain reading of the statute answers the question in the negative. Section 362(a)(5) of the Bankruptcy Code stays "any act to create, perfect, or enforce against *property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." (Emphasis added). Acts that fall within Section 362(a)(5) are not included in those acts that are excepted by Section 362(b)(4). Thus, any action taken to create, perfect, or enforce a lien against the debtor's property is stayed regardless of who is seeking to take the action, a governmental unit or a private party. 3 *Collier, supra*, ¶ 362.05[5][b] at 362–61 ["The governmental unit ... may not take ... action that would violate the provisions of subsection (a)(4), (a)(5), or (a)(8) of section 362."]. The Section 362(b)(4) exception simply does not apply.

 As the record now stands, however, the Renssalaer Drive property is not property of the debtor, notwithstanding the debtor's inclusion of it on her schedules. The debtor herself acknowledges that it is not titled in her name. Absent some action by the debtor to establish an ownership interest in the Renssalaer Drive property, therefore, the automatic stay does not prohibit the Commission from proceeding in the district court as against

---

4. "[T]he debtor's exemption rights are fixed as of the petition date ...." *Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 687 (9th Cir. BAP 2000). The debtor's claims of exemption, however, are subject to objection if made timely pursuant to F.R.B.P. 4003. For present purposes, the court assumes that no objection to the debtor's claim of exemption of the Renssalaer Drive home will be filed and that the property is exempt.

that property. If such an interest is established, then the automatic stay would preclude the Commission's actions.

## VI.

In this order, the court has attempted to decide the issues framed by the parties. Those issues are very narrow ones. Other than as limited by this order, the Commission is left with the ability to pursue its action against the debtor in the district court, including enforcing the preliminary injunction. The debtor is left with the ability to use her post-petition income to pursue confirmation of her Chapter 13 plan to pay her creditors, including those of principal concern to the Commission.

Acts that are subject to the automatic stay can be pursued if stay relief is first obtained. 11 U.S.C. § 362(d). Nothing in this order should be construed as preventing the Commission from seeking such relief.

Similarly, acts that are not subject to the automatic stay can be prohibited by injunction. 11 U.S.C. § 105; F.R.B.P. 7001(7). *See also, 2 Collier, supra,* ¶ 105.01. Likewise, the court can determine the debtor's interest in property. F.R.B.P. 7001(2). Nothing in this order should be construed as preventing the debtor from seeking such relief.

## VII.

For these reasons, the court grants the motions in part and denies the motions in part as more particularly described in this order.